# EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2076CV00094 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): Diermeier Consulting Associates n/k/n FirstSightGroup et al | COUNTY<br>Berkshire |
|---|---|

**ADDRESS:**

79 Nancy Ave.

Pittsfield, Ma. 01201

**DEPENDANT(S):** Russ Rosenzweig

| ATTORNEY: Rinaldo Del Gallo | ADDRESS: |
|---|---|

**ADDRESS:**

PO Box 1082

Pittsfield, MA 01201

1328 North State Parkway

Chicago, Illinois

**BBO:** 632880

60610

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO.<br>D03 | TYPE OF ACTION (specify)<br>Injunction | TRACK<br>F | HAS A JURY CLAIM BEEN MADE?<br>[X] YES   [ ] NO |
|---|---|---|---|

***If "Other" please describe:** Additional actions in attached complaint

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

THE COMMONWEALTH OF MASSACHUSETTS
BERKSHIRE S.S. SUPERIOR COURT

FILED   MAY 26 2020   FILED

A. Documented medical expenses to date:
1. Total hospital expenses ........................................ $ _____
2. Total doctor expenses .......................................... $ _____
3. Total chiropractic expenses .................................. $ _____
4. Total physical therapy expenses ........................... $ _____
5. Total other expenses (describe below) ................... $ _____
   Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................... $ _____
C. Documented property damages to dated ........................................ $ _____
D. Reasonably anticipated future medical and hospital expenses ........... $ _____
E. Reasonably anticipated lost wages .............................................. $ _____
F. Other documented items of damages (describe below) ..................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Loss of revenue, loss of intellectual property, loss of trade secrets, loss of business opportunities,

and ongoing irreparable harm to Plaintiffs requiring injunctive, performance, and equitable relief. - See complaint

TOTAL (A-F):$ See complaint

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
BREACH OF CONTRACT, MISAPPROPRIATION, THEFT OF TRADE NAME AND DECEPTIVE TRADE PRACTICES

TOTAL: $ See complaint

FRAUD PERPETRATED ON CLIENTS, FRAUD PERPETRATED ON PLAINTIFFS DIRECTLY, see attached 12 counts

**Signature of Attorney/Pro Se Plaintiff:** X _____ Paul DelGallo   **Date:** May 21, 2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

None.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _____   **Date:** May 21, 2020

/3)

MA Berkshire County Superior Court

| DIERMEIER CONSULTING ASSOCIATES A/K/A FIRSTSIGHT GROUP, ET AL | Case No.: | 2076CV00094 |
|---|---|---|
| Plaintiff/Petitioner | | |
| vs. MR. RUSS ROSENZWEIG | AFFIDAVIT OF SERVICE OF SUMMONS; COMPLAINT | |
| Defendant/Respondent | | |

Received by Brian Riebel, on the 17th day of June, 2020 at 11:07 AM to be served upon MR. RUSS ROSENZWEIG at 1328 North State Parkway, Chicago, Cook County, IL 60610-2118.
On the 22nd day of June, 2020 at 9:05 AM, I, Brian Riebel, SERVED MR. RUSS ROSENZWEIG at 1328 North State Parkway, Chicago, Cook County, IL 60610-2118 in the manner indicated below:

[X] **Posting**
By then and there personally affixing 1 true and correct copy(ies) of the above listed documents in a conspicuous place on the property.

**Attempts:**
6/18/2020 6:55 PM: No answer at door; no movement inside and no noise inside. Locked gate at entrance. Rang bell, no answer. Upstairs windows opened slightly. Realtor lock box on gate. No signs of any activity. Stand alone townhouse, no neighbors to speak with.

[X] **Mailing**
On the date of ___6/23/20___, declarant then deposited in the United States mail, by ___Regular US mail___, in the county where the property is situated, the above listed documents with proper postage to:
**MR. RUSS ROSENZWEIG**
**1328 North State Parkway**
**Chicago, IL 60610-2118**

THE COMMONWEALTH OF MASSACHUSETTS
BERKSHIRE S.S. SUPERIOR COURT

F I L E D
JUL 13 2020
F I L E D

Service Fee Total: $125.00

Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Deborah Sapien_

| NAME: | | | 6/23/20 |
|---|---|---|---|
| Brian Riebel | | 115-002394 | |
| | | Server ID # | Date |

## Commonwealth of Massachusetts

BERKSHIRE, SS.

Diermeier Consulting Associates
a/k/a  FirstSightGroup, A Delaware Limited  Liability Company
63 Partners, A Delaware Limited Liability Company
Paul Marc Del Gallo, in his personal capacity   PLAINTIFF(S),

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO.   2076 CV 00094

v.

Mr. Russ Rosenzweig                            DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO   Mr. Russ Rosenzweig                            . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the  Berkshire Superior Court        Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
     the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
     opportunity to tell your side of the story. You must respond to this lawsuit in writing, even if you expect
     to resolve this matter with the Plaintiff. If you need more time to respond, you may request an
     extension of time in writing from the Court.

     **How to Respond.**   To respond to this lawsuit, you must file a written response with the court and mail a
     copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

76 East St, Pittsfield, Ma 01201  Filing your signed original response with the Clerk's Office for Civil Business Berkshire SuperiorCourt,
                                 (address), by mail or in person,  **AND**

     b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
         address:  79 Nancy Ave Pittsfield Ma. 01201

     **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
     must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
     Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
     use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
     based on the same facts or transaction described in the Complaint, then you must include those claims
     in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
     lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
     Answer or in a written demand for a jury trial that you must send to the other side and file with the
     court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
     **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
     to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If
     you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
     described in the rules of the Court in which the complaint was filed, available at
     www.mass.gov.courts/case-legal-res/rules of court.

3

**Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.
**Required information on all filings**: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____. (SEAL)

Clerk-Magistrate _Deborah Stapleer_

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____          Signature: _____

**N.B.    TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

4

Massachusetts Trial Court
Superior Court Department
Berkshire Division

| | |
|---|---|
| Diermeier Consulting Associates<br>a/k/a   FirstSightGroup,[1]<br>A Delaware Limited  Liability Company<br><br>63 Partners LLC.,<br>A Delaware Limited Liability Company<br><br>Paul Marc Del Gallo, in his personal<br>capacity<br><br>   Petitioners,<br><br>  v.<br><br><br>Mr.  Russ  Rosenzweig,  in  his  personal<br>capacity<br><br>   Defendant | Case No.:<br><br>**Averred Complaint**<br><br>**JURY TRIAL DEMAND** |

HERE COMES PAUL MARC DEL GALLO:

I, Paul Marc Del Gallo do hereby state under pains of perjury that all of the following facts are true or believed to be true, all of the following beliefs are believed to be true, and all assertions  of law are beliefs believed to be true.[2]

_(signature)_

Paul Marc Del Gallo    Date May 21, 2020

Averred Complaint, PAGE 1

5

## THE PARTIES

1. Paul Marc Del Gallo resides and lives[3] at 79 Nancy Avenue, Pittsfield, Massachusetts, 01201.

2. Paul Marc Del Gallo is representing himself, in his personal capacity, *pro se.*

3. Diermeier Consulting Associates a/k/a FirstSightGroup, is a Delaware Limited Liability Company of which Paul Del Gallo is the Managing Director and an officer.

4. 63 Partners is a Delaware Limited Liability Company of which Paul Del Gallo is a Managing Director and officer.

5. Diermeier Consulting Associates a/k/a FirstSightGroup is a Delaware Limited Liability Company of which Paul Del Gallo is a Managing Director and officer.

6. Attorney Rinaldo Del Gallo, III (brother of Paul Marc Del Gallo) is appearing as counsel for Diermeier Consulting Associates a/k/a FirstSightGroup LLC, and 63 Partners, LLC.

---

[1] FirstSightGroup (all one word) is a "doing business as" organization.

[2] Because it is made under pains of perjury, this document shall also serve as an affidavit of Paul Del Gallo for all purposes, including but not limited to motions for summary judgment.

[3] Mr. Del Gallo is a manager in both LLCs and a major shareholder in the LLCs in this

7. Mr. Russ Rosenzweig is an individual that lives at 1328 North State Parkway Chicago, Illinois, 60610-2118.

8. Paul Del Gallo is a Managing Member and part owner of both 63 Partners and Diermeier Consulting Associates.

9. Mr. Russ Rosenzweig is an owner of several firms through a firm he owns, "86 Pillars".

10. Mr. Rosenzweig has interests in numerous additional LLCs.

11. The assets in question are the property of the plaintiffs, Paul Marc Del Gallo, in his personal capacity, Diermeier Consulting Associates a/k/a FirstSightGroup, a Delaware Limited Liability Company, and/or 63 Partners, a Delaware Limited Liability Company.

12. 63 Partners is a Delaware limited liability company

13. 63 Partners has its principal place of business in Massachusetts.

14. 63 Partners is owned by Del Gallo, Daniel A. Diermeier ("Diermeier"), and Hari K. Vallurupalli ("Vallurupalli")

15. Diermeier Consulting Associates is a limited liability company ("LLC").

16. Diermeier Consulting Associates has its principal place of business in Massachusetts.

17. Diermeier Consulting Associates was founded in 2005 by Daniel A. Diermeier.

18. A great deal of the Confidential Information disclosed to Rosenzweig in the

    Agreement was the sole property of Diermeier Consulting Associates, its owners, its

    employees, and its clients.

19. 63 Partners and some of its affiliates is a successor and/or assignee and/or licensee of

    Diermeier Consulting Associates' confidential data and intellectual property.

20. Mr. Paul Marc Del Gallo and Mr. Russ Rosenzweig are business associates; the men

    have had common business interests in other companies.

## VENUE

21. The previous paragraphs are incorporated by reference.

22. Venue is proper in Berkshire County Superior Court under Mass. Gen. L. c. 223 §1

    because this lawsuit concerns a transitory action, and a transitory action[4] may be

    brought where any party lives, and Paul Del Gallo (the plaintiff) lives in Pittsfield,

    Del Gallo (the plaintiff) lives in Pittsfield, Massachusetts.[5]

---

[4] "Transitory actions are actions for causes that may have happened anywhere, as a debt that may have been contracted anywhere, personal injuries may have been inflicted anywhere, character slandered, personal property

# SUBJECT MATTER JURISDICTION

## SUBJECT MATTER JURISDICITION BY REASON OF AMOUNT OF DAMAGES

23.     The previous paragraphs are incorporated by reference.

24. The Superior Court has original jurisdiction in civil actions over $50,000 and in

matters where equitable relief is sought.

---

taken anywhere." *Curtis v. Garrison,* 211 Tenn. 339, 342,364 S.W.2d 933, 934, 1963 Tenn. LEXIS 355, *3-4. "Courts have distinguished between transitory actions and 'local' actions, which are *in rem* actions affecting title to real property." *Hallaba v. WorldCom Network Servs.,* 196 F.R.D. 630, 646, 2000 U.S. Dist. LEXIS 13973. "This provision was made for the convenience of litigating parties." *Williams v. Campbell*, 44 Mass. 209 (1841).

It is the plaintiff, and not the court or opposing party that choses venue: "The provision of G. L. c. 213, § 5, authorizing courts and justices thereof in any county to transact any business of such courts and direct the entry of any order, judgment or decree in an action, suit or proceeding pending in the same court in another county, was not intended to give the court authority to transfer a case for trial against the wishes of a plaintiff who had a right to bring it in the county where it was pending." *Stoneman v. Coakley*, 266 Mass. 64, 66, 164 N.E. 802,803 (1929).

5 If a person lives in two places in Massachusetts, he may file his lawsuit in either place. *Bolton v. Krantz*, 54 Mass. App. Ct. 193, 198 (2002) (holding that inmate using Massachusetts transitory venue statue may sue either where he is incarcerated or where he lived before being incarcerated); *Burke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 346 S.W.2d 663, 664, 1961 Tex. App. LEXIS 2331, *1; *Cauble v. Gray*, 604 S.W.2d 197, 199, 1979, Tex. App. LEXIS 4616, *4 *Fromkin v. Loehmann's Hewlett, Inc.*, 16 Misc. 2d 117, 118, 184 N.Y.S.2d 63, 65, 1959 N.Y. Misc. LEXIS 4306, *4-5; *Cook Group v. Purdue Research Found.*, 2002 U.S. Dist. LEXIS 13277, *16-17, 2002 WL. 1610951 and cases cited therein.

25. This conclusion is reached by reading G.L. c. 212, § 3 which states, "Except as otherwise

provided by law, the court shall have original jurisdiction of civil actions for money

damages. The actions may proceed in the court only if there is no reasonable likelihood that

recovery by the plaintiff will be less than or equal to $25,000, *or an amount ordered from*

*time to time by the supreme judicial court.*"

26. The Supreme Judicial Court promulgated an "Order Regarding Amount-in-Controversy

Requirement Under G.L, c. 218, § 19 and G.L. c. 212, § 3," which reads, in part, bolding

added:

> "Under G.L. c. 212, § 3, a reciprocal $25,000 amount requirement applies to
> civil actions for money damages commenced in the Superior Court. Under
> this statute, such actions may proceed in the Superior Court 'only if there is
> no reasonable likelihood that recovery by the plaintiff will be less than or
> equal to $25,000 or an amount ordered from time to time by the supreme
> judicial court.' **The Court hereby exercises its authority to order that this**
> **amount also be increased from $25,000 to $50,000.** This Order shall be
> effective on January 1, 2020, and applicable to civil actions for money
> damages commenced on or after that date."

27. While the Plaintiffs respectfully maintain that only the legislature can set the subject

matter jurisdiction of courts and the determination of the subject matter of courts cannot be

delegated to the judiciary without violating Article 30 of the Mass. Decl. of Rights of the

Mass. Constitution (separation of powers), the reality is that the damages amount to far in

excess of the minimum threshold of damages, far surpassing $50,000 by at the very least

one order of magnitude.

28. The loss of business opportunities alone resulted in loss of multiple hundreds of thousands of dollars per year, easily meeting the $50,000 financial damages requirements of the court.

29. There are also damages to business reputation by the defendant's conduct far in excess of the minimum $50,000 jurisdictional requirements of this court.

## SUBJECT MATTER JURISDICTION BECAUSE EQUITABLE RELIEF IS SOUGHT

30.      The previous paragraphs are incorporated by reference.

31. In addition to monetary damages (both actual and punitive), equitable relief is also being sought.

32. Seeking equitable relief grants subject matter jurisdiction to the Superior Court[6] under Mass. Gen. L. c. 214 §1 regardless of the amount of damage, which states, "The supreme judicial and superior courts shall have original and concurrent jurisdiction of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . ."

---

[6] It is technically "the Superior Court department of the Trial Court."

**SUBJECT MATTER JURISDICTION UNDER CHAPTER 93A, SECTION 11 for unfair method of competition or an unfair or deceptive act in commerce.**

33.　　　　The previous paragraphs are incorporated by reference.

34.　　　　In addition, apart from (1) being litigation over an amount over $50,000, (G.L. c. 212, § 3 as modified by the SJC order modifying that amount) (2) being a complaint in equity (Mass. Gen. L. c. 214 §1), additional subject matter is proper for this court because (3) **relief is also sought under Chapter 93A, Section 11,** the statute pertaining to unfair method of competition or an unfair or deceptive act vis-à-vis injury to merchants or people or entities in commerce, and which specifically states jurisdiction shall be in the superior court. The statute states, in part, emphasis supplied,

> "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, ***bring an action in the superior court,*** . . . whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."[7]

---

[7] This is not to be confused for a Chapter 93A, Section 9, which is for consumers. Section 9 pertains to people "other than a person entitled to bring action under section eleven of this chapter." Under this statutory regime, Section 9 is for people who are consumers who have been hurt by unfair and deceptive trade practices, whereas Section 11 is for "any person who engages in the conduct of any trade or commerce and who suffers any loss." It is a roundabout way of saying consumers, but consumers are the people who might be hurt by an unfair or deceptive trade practice that are not "person who engages in the conduct of any trade or commerce" to put them

## SUMMARY OF SUBJECT MATTER JURISDICTION

35. As stated, the fact that (1) litigation is for an amount over $50,000, (2) equitable relief is sought, and (3) relief is sought for unfair and/or deceptive trade practices under Mass. G. l. c. 93A §11, there are three separate and distinct grounds for the Superior Court department of the Massachusetts Trial Court to have subject matter jurisdiction.[8]

# PERSONAL JURISDICTION

36.    The previous paragraphs are incorporated by reference.

37. While Mr. Russ Rosenzweig lives in Chicago, Illinois, personal jurisdiction is still proper in Massachusetts under Mass. Gen. L. c. 223 §3, the Massachusetts long-arm statute.

38. Pursuant to Mass. Gen. L. c. 223A §3(a), the "long arm statute," personal jurisdiction exist when there is *"transacting any business in this commonwealth."*

---

under Section 11. Apart for putting Chapter 93A Section 11 actions in the subject matter jurisdiction in the Superior Court exclusively (save for some specified Housing Court actions that are not relevant here), only Chapter 93A Section 9, subsection 3 requires "a written demand for relief," colloquially referred to as a "93A demand letter." 93A demand letter do not apply to spats between two people that are both engaging in commerce. Thus, many if not most business tort litigation comes under Section 11 of Chapter 93A, puts subject matter jurisdiction in the Superior Court (save for a few actions that are for the Housing Court), and does not require a 93A demand letter.

8   The expression "Subject Matter Jurisdiction" is used based on historical practice.
    Clearly, the Massachusetts Trial Court, which the Superior Court is but a department, has subject matter jurisdiction over the matter. The "court" is technically the Massachusetts Trial Court. These pleadings plead, among other things, why the Superior Court is the right department of the Massachusetts Trial Court.

(a)   **PERSONAL JURISDICTION BY TRANSACTING BUSINESS IN THE COMMONWEALTH**

39. Mr. Russ Rosenzweig transacted business in this Commonwealth pursuant to Mass. Gen. L. c. 223A §3(a), by many different means, in a way that was including but not limited to the following non-exhaustive list:

    a.  The defendant, Mr. Russ Rosenzweig attempted to purchase a business "FirstSight B LLC" from plaintiff Paul Del Gallo to combine with a business to which Mr. Russ Rosenzweig was the Chief Executive Officer; FirstSight B LLC, while being a Delaware Limited Liability Corporation, is primarily run and otherwise operated out of Massachusetts, where Paul Del Gallo resides.

    b.  In the attempted effort to buy FirstSight B LLC, the defendant, Mr. Russ Rosenzweig directed and received telephone calls from Paul Del Gallo while Paul Del Gallo was in Massachusetts (knowing that Paul Del Gallo was in Massachusetts) so as to facilitate a binding contract which is the subject of this lawsuit, the Confidential Disclosure Agreement.[9]

---

[9] Making and receiving telephone calls has rendered jurisdiction in Massachusetts proper. For instance, it has been said by the SJC, "We think that by sending appraisal reports and by initiating numerous telephone calls to the plaintiffs at their headquarters in Massachusetts, the defendant undertook purposeful activity in the forum." *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 11 (Mass. 1979)

c. The defendant, Mr. Russ Rosenzweig directed hundreds of e-mails concerning the subjects of this lawsuit (and other things) to Paul Del Gallo's e-mail account which he knew was going to be both received and read in Massachusetts, pertaining to the business that is the subject of this lawsuit.

d. The defendant, Mr. Russ Rosenzweig, as to FirstSight B. LLC of which he tried to acquire, knew that "significant managerial decisions, based on the information [the Plaintiffs] had provided, would be made in Massachusetts" *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 11-12 (Mass. 1979).

e. The defendant, Mr. Russ Rosenzweig made deposits to Paul Del Gallo's bank accounts in Massachusetts for reimbursement for expenses associated with this business, including travel originating in Massachusetts.

f. Other transactions in Massachusetts included Mr. Rosenzweig proposing an "acquisition or combination" of "First Sight B. LLC," an affiliated firm Del Gallo owns which Del Gallo operates out of Massachusetts, by numerous phone calls and e- mails directed to Massachusetts, knowing they would be received in Massachusetts, the proposed transaction being part of the subject of this lawsuit.

g. To facilitate this transaction of an "acquisition or combination" of "FirstSight B. LLC, (FirstSight B. LLC

being an affiliated firm, Del Gallo owns which Del Gallo

operates out of Massachusetts), Rosenzweig entered into a contract titled

"Confidential **Disclosure Agreement**"[10] dated April 17, 2017 among 63 Partners

LLC and Paul Del Gallo (together, "Disclosing Party") and Mr. Russ Rosenzweig

("Recipient"), wherein this aforementioned Confidential

Disclosure Agreement was drafted, negotiated, and entered into by Del Gallo in

Massachusetts including the

execution of the Confidential Disclosure  Agreement.

h. At all times, when negotiating the terms of the

Confidential Disclosure Agreement, Mr. Russ Rosenzweig knew that Paul Del

Gallo, whether acting for himself and/or for the corporate plaintiffs (Diermeier

Consulting Associates and 63 Partners) was located in Massachusetts and was

getting his phone calls, faxes, and e-mails there, as well as physical mail.

i. All of Mr. Russ Rosenzweig's numerous phone calls, faxes, and e-mails to Paul

Del Gallo in Massachusetts, where Mr. Russ Rosenzweig knew Paul Del Gallo was

in Massachusetts, pertaining to the formation of the Confidential Disclosure

Agreement,

---

[10] As a general principle, confidential disclosure agreement [(CDA); also referred to as non-disclosure agreement (NDA) or secrecy agreement] is a legal agreement between a minimum of two parties which outlines information the parties wish to share with one another for certain evaluation purposes, but wish to restrict from wider use and dissemination. The parties agree not to disclose the non-public information covered by the agreement. CDAs are commonly executed when two parties are considering a relationship or collaboration together and need to understand the other's processes, methods, or technology solely for the purpose of evaluating the potential for a future relationship. That is what happened here-- Mr. Rosenzweig used information that he obtained by the Confidential Disclosure Agreement.

constitute transacting business in the Commonwealth of Massachusetts which provides personal jurisdiction to this court for it is the breach of the Confidential Disclosure Agreement, which is the subject matter of this lawsuit, along with sundry business torts arising out of this transaction.

j. After the agreement was signed by all parties, the follow through in terms of disclosing the confidential material that was the subject of the Confidential Disclosure Agreement happened in Massachusetts by phone calls, faxes and e-mails to and from Mr. Russ Rosenzweig.

k. In addition, apart from negotiating and entering the Confidential Disclosure Agreement which is the subject of this lawsuit in Massachusetts, Mr. Rosenzweig acquired the Confidential Information governed by the Confidential Disclosure Agreement ( in Paragraph 1 ) that Del Gallo retained and stored in Massachusetts-in other words, the situs of the Confidential Information misappropriated by Mr. Rosenzweig is in Massachusetts where said Confidential Information is stored on Paul Del Gallo's servers and hard drives and from which a copy was generated, given to, and otherwise disclosed to Mr. Rosenzweig.

l. This Confidential Disclosure Agreement bound Mr. Rosenzweig to not disclose any of the information that was being disclosed to him.[11]

---

[11] Paragraph 2 of the Confidential Disclosure Agreement said,

Averred Complaint, PAGE 14

**17**

m. In addition, Mr. Rosenzweig in the process of this attempted
   acquisition began to direct the work of
   First Sight B in anticipation of the acquisition being
   completed, which involved directing Mr. Del Gallo's work efforts and client contact,
   Mr. Del Gallo's work efforts and client contact directed by Mr. Rosenzweig taking
   place while Mr. Del Gallo was in Massachusetts.

n. In addition, the defendant Mr. Rosenzweig employed Mr.
   Del Gallo to perform services of developing intellectual property in Massachusetts.

o. Mr. Russ Rosenzweig objective was to "combine" First Sight B LLC, a
   corporation run out of Massachusetts, with one
   of his firms.

p. Mr. Russ Rosenzweig contracted to insure Mr. Paul Del Gallo and
   First Sight B, for risks located within this Commonwealth at the time
   of contracting.

---

"**Confidential Treatment**. Recipient shall maintain the Confidential Information in secrecy and will use best efforts to prevent its disclosure to third parties. Recipient shall limit the internal disclosure of the Confidential Information to only those employees, colleagues, or affiliates to whom it is necessary to disclose it for Recipient to perform its obligations hereunder, and all such employees, colleagues and affiliates shall themselves have an obligation of confidentiality to Recipient, with respect to which obligation Disclosing Party shall be deemed a third-party beneficiary." By the terms of the agreement, Mr. Russ Rosenzweig was the "Recipient."

40. "It is immaterial that the contract in question may have had significant connections with states other than the forum state. Plaintiff is not required to choose the forum with the most significant contacts as a matter of jurisdiction..." *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 12 (Mass. 1979)

41.      Soliciting business in Massachusetts as Mr. Rosenzweig did here, as well as voluntarily corresponding with Massachusetts residents as Mr. Rosenzweig did here, constitutes personal availment in Massachusetts. See *Tatro v. Manor Care,* 416 Mass. 763, 767-68 (1994).[12]

42. "The 'transacting any business' clause [in Section 3] has been construed broadly." *Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG.,* 26 Mass. App. Ct. 14, 17 (1988), relying on *Good Hope Indus.*, supra. *Accord Tatro v. Manor Care, Inc.* 416 Mass. 763 (1994).

43. The hundreds of e-mails from Mr. Russ Rosenzweig *regarding the transactions and occurrences that are the subject of this litigation* knowingly directed to the Plaintiffs in Massachusetts, the numerous phone calls directed to the Plaintiff in Massachusetts *regarding the transactions and occurrences that are the subject of this litigation*, the hundreds of e-mails and phone calls directed to Massachusetts

---

[12] In *Tatro,*

pertaining to receiving the confidential information that was the subject of the

Confidential Disclosure Agreement and strike to the heart of this lawsuit, confer personal

jurisdiction over Mr. Russ Rosenzweig, constitute purposeful availment of the

Massachusetts forum and behavior directly tied to the subject matter of this

lawsuit.

### (b) PERSONAL JURISDICTION BY CAUSING TORTIOUS INJURY IN THE COMMONWEALTH BY AN ACT OR OMISSION OUTSIDE THE COMMONWELATH (IF THERE ARE SYSTEMIC TIES), OR BY AN ACT OR OMMISSIONS IN THIS COMMONWALTH

44.      The previous paragraphs are incorporated by reference.

45. In addition, pursuant to other provisions of the Massachusetts long-arm statute Mass. Gen. L. c. 223A §3(d), personal jurisdiction may be also obtained by "causing tortious injury in this commonwealth by an act or omission outside this commonwealth *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.*"

46. So too, Mass. Gen. L. c. 223A §3(c), Massachusetts' long arm statute provides that one may obtain jurisdiction by "causing tortious injury by an act or omission in this commonwealth."

47. The defendant Mr. Russ Rosenzweig, as will be further described below, is so systemically present in the Commonwealth of Massachusetts, even if some of the described injuries in Massachusetts could be said to have originated outside of Massachusetts, there is jurisdiction.

Averred Complaint, PAGE 17

48. So too, many of the acts or omissions, nonetheless, took place in Massachusetts and caused in injury in Massachusetts.

49. The plaintiffs Paul Del Gallo and Diermeier Consulting Associates LLC, and 63 Partners, LLC have certainly suffered "tortious injury" in the Commonwealth of Massachusetts from the defendant Mr. Russ Rosenzweig for the following torts:

   a. Mr. Russ Rosenzweig has engaged in tortious fraud (or "intentional misrepresentation") by fraudulently portraying himself as the Chief Financial Officer of FirstSight B (which operates primarily out of Massachusetts) in order to get business from third parties, misrepresented the ownership of FirstSight in order to get business from third parties, fraudulently represented himself as having served FirstSight's clients in order to get business from third parties which resulted in lost business for the Massachusetts based Plaintiffs, and misrepresented himself as owning or

having rights to the intellectual property of Plaintiffs (the situs of which is in

Massachusetts on Paul Del Gallo's hard drive) in order to get business from third

parties: not only is this lost business the Plaintiffs (Paul Marc Del Gallo, Diermeier

Consulting Associates a/k/a FirstSight Group, and 63 Partners,) would have

otherwise acquired, by Mr. Russ Rosenzweig incompetently providing said services

Mr. Rosenzweig has caused injury to the Plaintiffs' reputations among those that

would purchase the Plaintiffs services: all of this was directed at Plaintiffs'

consulting business which largely operated out of Massachusetts and constituted an

injury there.

b. Mr. Rosenzweig made these fraudulent misrepresentations to Elizabeth Sterba,

Manu Kalia, Randy Stevenson, Beth Marchessault, Florencio De Avila, Tomas

Bilbao and many others.

c. The aforementioned conduct of Mr. Russ Rosenzweig constitutes not only injury by

fraud, but tortious interference with advantageous of both present or prospective

business relationships: the simple reality is that the Massachusetts based Plaintiffs

offer a unique service that is not duplicated in the marketplace and to

which customers want but it is unique and cannot be had elsewhere in like kind and

degree, and Mr. Russ Rosenzweig claimed to have this unique product that

customers wanted, wherein in fact this unique product was owned by the Plaintiffs—

these unique assets are of *tremendous* importance in the world of consulting and is

what "opens doors" to clients for they are literally seeking your know-how and/or

intellectual property and/or expertise and relationships and reputation you would

have developed with other big name clients.[13]

d.  Mr. Russ Rosenzweig, having engaged in the aforementioned fraudulent behavior,[14]

among numerous other violations, then used this stolen intellectual property and

capability to perform a two-year analysis of Wells Fargo's culture which not only

was a loss of business the plaintiff would have enjoyed, Mr. Russ Rosenzweig really

botched it up so as to cause injury to the Plaintiffs

---

[13]  Anyone can say they can help another and be a consultant.                It is the expertise,
intellectual property by way of patents/trade secrets/patents or plain old know-how, list of clients,

and members of the consulting firm that have value to prospective clients.

[14] The aforementioned fraudulent behavior being "fraudulently portraying himself as the Chief
Financial Officer of FirstSight B in order to get business from third parties, misrepresented the
ownership of FirstSight in order to get business from third parties, fraudulently represented himself
as having served FirstSight's clients in order to get business from third parties, and misrepresented
himself as owning or having rights to the intellectual property of Plaintiffs' in order to get business
from third parties."

reputation because Russ Rosenzweig caused his clients to believe he was with or in fact was the Plaintiff corporations.

e. Mr. Russ Rosenzweig also presented himself to at least four (4) other clients as representing the Plaintiffs without the Plaintiffs' knowledge, including Amazon, E.N.E.L, Clorox, and Exxon, and upon information and belief there were dozens of others; this too damages the Plaintiffs, which all are principally operated out of Massachusetts.

f. Mr. Russ Rosenzweig portrayed himself as having the capabilities of the Plaintiffs to sundry clients, which he severely lacked, causing injury to the Plaintiffs reputation.

g. Mr. Russ Rosenzweig's false portrayal of himself as "with" the Plaintiffs' caused damage to the Plaintiffs by his disastrous handling, including and not limited to Wells Fargo, and the Plaintiffs' primary operations are located in Massachusetts.

h. As a result, Plaintiffs have found themselves associated with a large consulting failure on Mr. Russ Rosenzweig's

part, and potential massive reputational and legal liability to the Plaintiffs', said

business of Plaintiffs being principally operated in Massachusetts.

i. Mr. Russ Rosenzweig redirected Plaintiffs' assets including their "rainmakers",

scientists, and others to his benefit and specifically away from Plaintiffs', which not

only was a breach of the Confidential Disclosure Agreement, but constituted tortious

interference with present and perspective business relationships of the Massachusetts

plaintiffs, said plaintiffs' assets including their "rainmakers", scientists being part of

the Confidential Information of the Confidential Disclosure Agreement whose

storage situs is in Massachusetts on Paul Del Gallo's hard drive.

j. Mr. Russ Rosenzweig has engaged in the tort of misappropriation of trade

secrets and confidential information which have their situs in Massachusetts on

Paul Del Gallo's hard drive.[15]

---

[15] Theft of trade secrets is also a crime in Massachusetts. Mass. Gen. L. c. 266 §30(4) reads, "Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, secretes, unlawfully takes, carries away, conceals or copies with intent to convert any trade secret of another, regardless of value, whether such trade secret is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall be punished by imprisonment in the state prison for not more than five years, or by a fine of not more than twenty-five thousand dollars and imprisonment in jail for not more than two years. The term "trade secret" as used in this paragraph means and includes anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement."

k. Mr. Russ Rosenzweig stole the Confidential Information of the Confidential Disclosure Agreement which was negotiated in Massachusetts by phone calls and e-mails directed there by Mr. Russ Rosenzweig, said Confidential Information located in Massachusetts on Paul Del Gallo's hard drive, wherein Mr. Russ Rosenzweig with the intent to defraud clients, passed off as his own the intellectual property, know-how, experience, client confidential information, employee confidential information, of the Plaintiffs (who operate out of Massachusetts) and wherein the intellectual property, know-how, experience, client confidential information, employee confidential information is located and otherwise stored in Massachusetts, on Paul Del Gallo's hard drive; this not only deprived the Massachusetts Plaintiffs of very valuable business opportunities, it compromised the value of the intellectual property, know- how, experience, client confidential information, employee confidential information, all of which was stored in and otherwise located in Massachusetts on Paul Del Gallo's hard drive.

l. Specifically, Mr. Russ Rosenzweig used the intellectual property of plaintiffs, located in Massachusetts, including that Confidential Information (located in Massachusetts) governed by the Confidential Disclosure Agreement (that was negotiated in Massachusetts).

m. This Intellectual Property and Trade Secrets included the open source reputational management tools and the Intellectual Property for cultural analytics, all of which were subject to be kept confidential under the Confidential Disclosure Agreement drafted and executed in Massachusetts, the open source reputational management tools and the Intellectual Property for cultural analytics being stored in Massachusetts so as to maintain their confidentiality.

n. Plaintiffs are aware of four usages of Confidential Information located Massachusetts, Clorox, Amazon, E.N.E.L., and Exxon, in addition to the use for Wells Fargo.   On information and belief there are several more.

o. Since April 17, 2017 Mr. Russ Rosenzweig has used trade and confidential information from Plaintiffs for his own financial benefit.

p. Mr. Russ Rosenzweig used the confidential "Pipeline" reports to identify clients for his activities with SVII and other firms which he controlled.

q. Mr. Russ Rosenzweig used the trade secrets of the plaintiffs transferred the clients and attempted to serve those clients using the information he misappropriated; this included Aqua Andinas, E.N.E.L, Wells Fargo, and several others.

r. Mr. Russ Rosenzweig has claimed that he was able to profit from the use of Plaintiffs trade secrets in a declaration.

51. Mr. Russ Rosenzweig derives substantial revenue from services rendered in this Commonwealth; particularly from Plaintiffs' clients that he in effect and in actual practice stole.

52. Apart all the contact with the Plaintiff in Massachusetts, Mr. Russ Rosenzweig is the CEO and founder of Round Table Group which has much business directed to Massachusetts.

53. According to Mr. Russ Rosenzweig's Linkedin page, he states "I am the CEO and co-founder of Round Table Group, Inc (RTG). We connect lawyers with expert witnesses in all fields. At RTG we created a new business category: expert services. Someone has already done what you're thinking about doing. Use Round Table Group to find that expert."[16]

54. An entire page of Round Table Group's website is directed at experts for Massachusetts Courts, on the page https://www.roundtablegroup.com/expert-witness- state/massachusetts/, retrieved 5/14/2020.[17]

---

[16] https://www.linkedin.com/in/Mr. Russ Rosenzweig retrieved Thursday, May 14, 2020.

[17] The website states, "Massachusetts is New England's most populated state. Most of its population is found in the cities of Boston, Springfield, and Worcester. Traditionally, Massachusetts has been an industrial state. The city of Lowell was the home of one of the country's first textile mills in the early 1800s, Today, Massachusetts manufacturing is diverse. There are electronics from Waltham and Springfield, industrial equipment from Westwood and Lynn, technical equipment and tools from Amesbury, and plastics from New Bedford. Cranberries from Cape Cod, apples from Groton, and dairy products from Upton are Massachusetts main agricultural products. Cambridge and Bedford are home to high-technology research and development, while finance and trade take place in Boston. Tourism offers a boost to the Massachusetts economy. Each year, millions of tourists come to the historic cities of Boston, Plymouth and Salem, and the coastal towns of Cape Cod and Nantucket.

Here are a few of our favorite Massachusetts expert witnesses. If you find someone who fits what you need, let us know and we'll connect you. Otherwise, we're delighted to conduct a quick but thorough search and deliver a roster of top candidates for you to review. There is no charge for the custom search
— you pay only the disclosed hourly rate if you retain one of our experts.

55. The Round Table Group website refers to numerous experts by an "expert number,"[18] with page after page of experts in Massachusetts.

56. While Mr. Russ Rosenzweig is the CEO and founder of Round Table Group and only Mr. Russ Rosenzweig is being sued such extensive and ongoing connections to Massachusetts on the part of Mr. Russ Rosenzweig constitute on-going, general presence in Massachusetts, so as to constitute general jurisdiction.

57. For the reasons described above, Mr. Russ Rosenzweig engages in a "persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth" of Mass. Gen. L. c. 223A §3 (d).

58. Because Mr. Russ Rosenzweig has causing tortious injury in this commonwealth as described above (and below), and because Mr. Russ Rosenzweig has engaged in a "persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth,"

---

[18] It is assumed so as to prevent hiring the expert without going through the firm.

there is personal jurisdiction under Mass. Gen. L. c. 223A §3 (d), even if the specific

transactions and occurrences that are the subject of this lawsuit are ruled to be having taken

outside of the commonwealth.

59. For the reasons described above, Mr. Russ Rosenzweig "derives substantial revenue from .

. . services rendered, in this commonwealth."

**(d)     PERSONAL JURISDICTION BY ACTS OR OMMISSION IN MASSACHUSETTS**

60.        The previous paragraphs are incorporated by reference.

61. Mass. Gen. L. c. 223 §3(c), Massachusetts' long arm statute provides that one may obtain

jurisdiction by "causing tortious injury by an act or omission in this commonwealth.

62. The omission of Mr. Russ Rosenzweig in Massachusetts was not keeping the

confidentiality of certain information (pursuant to the Confidential Disclosure Agreement

contract) that was located in Massachusetts as well.

63. Some of Mr. Russ Rosenzweig act of misrepresenting to third parties he was with

FirstSight Group and other plaintiffs, were in Massachusetts.

64. This included representing to clients some of whom have operations in Massachusetts, through multiple organizations that Mr. Rosenzweig owned or controlled that Mr. Russ Rosenzweig owned the intellectual property, master service agreements, naming rights, and track record of results of Diermeier Consulting Associates.

65. Many of these clients Mr. Russ Rosenzweig dealt with are in Massachusetts or substantially do business in Massachusetts, thus perpetuating acts or omission in Massachusetts that is the subject of this lawsuit.

## C) PERSONAL JURISDICTION: "contracting to supply services or things in this commonwealth":

66.      The previous paragraphs are incorporated by reference.

67. Mass. Gen. L. c. 223 §3(b), Massachusetts' long arm statute provides that one may obtain jurisdiction by "contracting to supply services or things in this commonwealth."

68. Here, Mr. Russ Rosenzweig contracted to obtain the right to examine (but not use) sundry intellectual property that was located in Massachusetts and then violated that contract and was in breach.

69. There were also contracts for hundreds of other things in Massachusetts which included client confidential information, company confidential information, employee confidential information, information which is governed by ERISA laws, confidential legal information, confidential investor information, addresses, social security numbers, customer lists, computer disks, tapes, computer hard drives, CD ROMS, sample products, prototypes and models the Companies' research, development, products, methods of manufacture, trade secrets, inventions, business plans, customers, investors, vendors, finances, personnel data, work product, Company Intellectual Property and other material or information considered proprietary by the plaintiffs relating to the current or anticipated business or affairs of any of any of the Companies, as well as the terms of this Agreement.

## COUNT 1: BREACH OF CONTRACT, BREACH OF CONFIDENTIALITY PROVISIONS OF PARAGRAPH 2 OF THE CONFIDENTIAL DISCLOSURE AGREEMENT

70. The previous paragraphs are incorporated by reference.

71. As previously stated, the purpose of a Confidential Disclosure Agreement is to make allow the Recipient (Mr. Russ Rosenzweig) to evaluate whether he was to acquire FirstSight B but not allow him to use in the Confidential Information in any other way, or to disclose it to third parties: in short, to allow him to know what he needed to know to consider the acquisition and to evaluate its business potential but to assure that the Confidential Information was not otherwise used by him or disclosed to other parties (save for the very narrow purposes stated in the agreement, subject to the protections stated in the agreement).

72. Paragraph 1 of the of the Confidential Disclosure Agreement particularized what the confidential information was that was subject to the agreement and defined what was the "Confidential Information."

73. This "Confidential Information," was and is of immense value to all the Plaintiffs.

74. Pursuant to Paragraph 2 of the Confidential Disclosure Agreement which Mr. Russ Rosenzweig signed as did Plaintiffs on or about April 17, 2017, of which Mr. Russ Rosenzweig was "the Recipient," and 63 Partners, LLC and Paul Del Gallo were "the Disclosing Party":

"**Confidential Treatment.** The Recipient shall maintain the Confidential Information in secrecy and will use best efforts to prevent its disclosure to third parties. Recipient shall limit the internal disclosure of the Confidential Information to only those employees, colleagues, or affiliates to whom it is necessary to disclose it for Recipient to perform its obligations hereunder, and all such employees, colleagues and affiliates shall themselves have an obligation of confidentiality to Recipient, with respect to which obligation Disclosing Party shall be deemed a third-party beneficiary."

75. Mr. Russ Rosenzweig did not maintain the Confidential Information in secrecy which breached the Confidential Disclosure Agreement and caused damages.

76. Mr. Russ Rosenzweig did not use best efforts to prevent the disclosure of the Confidential Information to third parties, which constituted a breach of the Confidential Disclosure Agreement, and caused damages.

77. Mr. Russ Rosenzweig did not limit the internal disclosure of the Confidential Information to only those employees, colleagues, or affiliates to whom it was necessary to disclose it for Mr. Russ Rosenzweig to perform his obligations, which constituted a breach of the Confidential Disclosure Agreement, and caused damages.

78. Pursuant to the Confidential   Disclosure Agreement, Mr. Russ Rosenzweig
    was to assure that all such employees, colleagues and affiliates shall themselves
    have an obligation of confidentiality to Mr. Russ Rosenzweig, with respect to
    which obligation Disclosing Party (the Plaintiffs 63 Partners, LLC and Paul Del
    Gallo) were to be deemed a third-party beneficiary: Mr. Russ Rosenzweig did
    not assure that all of his employees, colleagues and affiliates shall themselves
    have an obligation of confidentiality to Mr. Russ Rosenzweig to which , the
    Plaintiffs 63 Partners, LLC and Paul Del Gallo) were to be deemed a third-party
    beneficiary, which    breached the terms of the Confidential Agreement and
    caused the Plaintiffs damages.

## COUNT 2: BREACH OF CONTRACT, BREACH OF "NO INTEREST CREATED" PROVISIONS OF PARAGRAPH 3 OF THE CONFIDENTIAL DISCLOSURE AGREEMENT

79. The previous paragraphs are incorporated by reference.

80. As previously stated, the "Disclosing Party" are the 63 Partners, LLC and Paul Del Gallo
    and the Recipient was Mr. RussRosenzweig, to which the Confidential Disclosure
    Agreement stated in Paragraph 3:

    > **No Interest Created.** The disclosure of Confidential Information by
    > Disclosing Party to Recipient shall not be deemed to create in Recipient any
    > ownership or other proprietary interest in the Confidential Information,
    > including but not limited to a license, other than the implied license necessary
    > for Recipient to perform its duties pursuant to the consulting relationship.
    > Without limiting the generality of the foregoing, Recipient shall not use the
    > Confidential Information to develop any proprietary products and shall not
    > incorporate any of the Confidential Information, or the fruits of its use
    > thereof, into any patent application or other trade secret claimed by Recipient.
    > Disclosing Party shall retain all proprietary and intellectual property rights to
    > the Confidential Information and the uses thereof

81. By the plain terms of paragraph 3 the Confidential Disclosure Agreement, the disclosure of the Confidential Information (as stated in Paragraph 1 of the Confidential Disclosure Agreement) by 63 Partners, LLC and/or Paul Del Gallo to Mr. Russ Rosenzweig did not in any way create in Mr. Russ Rosenzweig any ownership or other proprietary interest in the Confidential Information that was the subject of the agreement and embodied in paragraph 1 of the Confidential Disclosure Agreement: this would create an implied term of the Confidential Disclosure Agreement that the Confidential Information that was the subject of the agreement was not to be held out by Mr. Russ Rosenzweig as being his own or licensed to him.

82. By Mr. Russ Rosenzweig holding out to numerous third parties the Confidential Information that was the subject of the Confidential Disclosure Agreement as somehow being his own (or licensed to him), Mr. Russ Rosenzweig breached the implied term of the Confidential Disclosure Agreement.

83. When a contract (as the one here) explicitly says that the disclosure of the confidential information does not create in the recipient of the confidential information an interest in the confidential agreement, there is an implied agreement not to hold out otherwise to third parties (which happened here and was a breach).

84. Moreover, such clauses stating that no interest is created further implies that the Confidential Information will not be used by the Recipient, here Mr. Russ Rosenzweig, other than as  stated as a proper use by the agreement (which here was to evaluate the acquisition of FirstSight B): Mr. Russ Rosenzweig's misappropriation of the Confidential Information as previously described breaches this agreement.

85. Regardless of what may be implied by the Confidential Disclosure agreement, the explicit provision that the "Recipient (Mr. Russ Rosenzweig) shall not use the Confidential Information to develop any proprietary products" was flagrantly breached when Mr. Russ Rosenzweig performed consulting services to third parties and used the Confidential Agreement that he promised to both not use or disclose, and this caused damages by way of lost business to the plaintiffs *and* in addition to lost business opportunities, damage to their business reputation when Mr. Russ Rosenzweig egregiously performed poor consulting.

86. The explicit provision that Mr. Russ Rosenzweig was not to incorporate any of the Confidential Information, or the fruits of its use thereof, into any patent application *or other trade secret* claimed by Recipient (Mr. Russ Rosenzweig) was violated causing the Plaintiffs' damages.

87. Mr. Russ Rosenzweig took the Confidential Information, which in themselves constitute a form of trade secrets, and Mr. Russ Rosenzweig both *used* the Confidential Information *and* held it out to be his own "trade secrets" or propriety method and/or   proprietary knowledge though the Confidential Disclosure Agreement explicitly stated he was not to do so: in so doing he breached the explicit terms of the Confidential Disclosure Agreement and thus deprived the Plaintiffs of business opportunities.

88. Also, Mr. Russ Rosenzweig damaged the Plaintiffs reputation when he fraudulently held out to others that he had proper ownership of the Confidential Information of the Confidential Disclosure Agreement, when he fraudulently maintained that he was working on behalf of the Plaintiffs; when he fraudulently portrayed himself   as the Chief Financial Officer of FirstSight in order to get business from third parties; when he misrepresented the ownership of FirstSight B in   order to get business from third parties; when he fraudulently represented himself as having served FirstSight's clients in order to get business from third parties; and when he misrepresented himself as owning or having rights to the intellectual property of Plaintiffs' in order to get business from third parties: not only is this business the defendants would have acquired, by incompetently providing said services he has caused injury to the Plaintiffs' reputations among those that would purchase their services

89. As previously stated, Mr. Russ Rosenzweig had fraudulently portrayed himself as the Chief Financial Officer of FirstSight B in order to get business from third parties; misrepresented the ownership of FirstSight in order to get business from third parties; fraudulently represented himself as having served FirstSight's clients in order to get business from third parties; and misrepresented himself as owning or having rights to the intellectual property of Plaintiffs' in order to get business from third parties; and apart from other torts, constituted breach of contractual provision of the Confidential Disclosure Agreement that Paul Del Gallo and 63 Partners, LLC and Three Companies,

LLC "shall retain all proprietary and intellectual property rights to the Confidential Information and the uses thereof."

90. Mr. Russ Rosenzweig acquired clients disclosed in the Confidential Disclosure Agreement.

91. Mr. Russ Rosenzweig misappropriated the intellectual property that was part of the Confidential Information of the Confidential Disclosure Agreement for Mr. Russ Rosenzweig own benefit, said Confidential Information and Intangible assets being located in Massachusetts.

92. Mr. Russ Rosenzweig continues to use the intangible assets located in Massachusetts of the Plaintiffs, including continuing to their partners and clients which constitute part of the Confidential Information.

93. Mr. Russ Rosenzweig continues to disclose the Confidential Information of the Confidential Disclosure Agreement to parties in Massachusetts and outside, causing irreparable harm to Plaintiffs.

94. Mr. Russ Rosenzweig used the Confidential Information of the Confidential Disclosure Agreement to perform a

    cultural analysis of Wells Fargo in the midst of its ongoing controversies and challenges; this use of the intellectual property (located and stored in Massachusetts) failed, and Mr. Russ Rosenzweig was fired from the account, and the executives who retained him were also terminated.

95. Subsequently those executives of Wells Fargo have been charged by various government regulators and the Security and Exchange Commission.

96. Mr. Russ Rosenzweig continues to book accounts through a claimed "training institutes".

97. These bookings include an account ENEL, Aquas Andinas, Sodimac, and numerous others he continues to prospect, engage, and receive funds from, where he uses the misappropriated Confidential Information.

98. Rosenzweig employed and continues to employ a partner of Del Gallo's operation to harvest these clients using Confidential Information Mr. Russ Rosenzweig misappropriated.

99. Mr. Russ Rosenzweig continues to fraudulently represent his firms and operations as the successor of Diermeier Consulting Associates, going so far as to use the logos, contacts, past successes, and other copyrighted material to present his operation; the Confidential Disclosure Agreement with 63 Partners specifically prohibits this.

100.    Mr. Russ Rosenzweig has now claimed in various "Declarations" and testimony provided to other courts that he considers himself the owner of these assets, and continues to use them, and fraudulently misrepresent them, to clients, intermediaries and others.

## COUNT 3: BREACH OF CONTRACT, BREACH OF "RETURN" PROVISIONS OF PARAGRAPH 5 OF THE CONFIDENTIAL DISCLOSURE AGREEMENT

101.    The previous paragraphs are incorporated by reference.

102.    Pursuant to Paragraph 4 of the Confidential Disclosure Agreement, "Period of Confidentiality," it is stated, "Recipient's obligations under this Agreement shall extend indefinitely."

103.    Pursuant to Paragraph 5 of the Confidential Disclosure Agreement, "Following the termination or expiration of Recipient's evaluation of the Confidential Information, Recipient shall return the Confidential Information to Disclosing Party and shall not retain any copies, descriptions, or summaries thereof."

104.    At the termination of Mr. Russ   Rosenzweig evaluation of the Confidential Information of the Confidential Disclosure Agreement, and when Mr. Russ Rosenzweig's evaluation of the Confidential Information in the Confidential Disclosure Agreement expired, not only did Mr. Russ Rosenzweig not return the Confidential Information to the Disclosing Party (the Plaintiffs)so as to breach the Confidential Disclosure Agreement, not only did Mr. Russ Rosenzweig "retain any copies, descriptions, or summaries thereof" so as to breach the Confidential Disclosure Agreement, Mr. Russ Rosenzweig misappropriated the Confidential Information as described herein, to effectively steal the clients   of the Plaintiffs for his own benefit, thereby breaching the "Return" provisions of Paragraph 5 of the Confidential Disclosure Agreement, causing the Plaintiffs' damages.

105.    Here, instead of returning the confidential information as required by paragraph 5 of the Confidential Disclosure Agreement, Mr. Russ Rosenzweig misappropriated the Confidential Information of the Confidential Disclosure Agreement, fraudulently portrayed himself as the Chief Financial Officer of FirstSight B in order to get business from third parties, misrepresented the ownership of FirstSight in order to get business from third parties, fraudulently represented himself as having served FirstSight's clients in order to get business from third parties, and misrepresented himself as owning or having rights to the intellectual property of Plaintiffs' (Paul Del Gallo and 63 Partners, LLC and Three Companies, LLC) in order to get business from third parties, all the while failing to return said Confidential Information and retaining it for himself.

### COUNT 4: MISAPPROPRIATION OF BUSINESS OPPORTUNITIES

106.     The previous paragraphs are incorporated by reference.

107.     The corporate opportunity doctrine prohibits a corporate fiduciary from exploiting an opportunity related to the corporation's business unless he or  she first offers that opportunity to the corporation.

108.     By signing the Confidential Disclosure Agreement of April 17, 2017 in contemplation of being a shareholder in FirstSight LLC, Mr. Russ Rosenzweig created a fiduciary duty to the corporate plaintiffs and to Paul Del Gallo in his personal capacity.

109.     Here, Mr. Russ Rosenzweig misappropriated the Confidential Information of the Confidential Disclosure Agreement; fraudulently portrayed himself as the Chief Financial Officer of FirstSight in order to get business from third parties; misrepresented the ownership of FirstSight in order to get business from third parties; fraudulently represented himself as having served FirstSight's clients in order to get business from third parties; and misrepresented himself as owning or having rights to the intellectual property of Plaintiffs' in order to get business from third parties; *when these business opportunities should have been presented to the Plaintiffs*.

110.    Here, Mr. Russ Rosenzweig did not act in good faith, used company assets to exploit the opportunity, and the opportunities are essential to the plaintiff companies' businesses.

111.    Plaintiffs have a tangible interest in the outcome of the dispute as they have enforced the agreement on or about August 2018 with Mr. Russ Rosenzweig, who continues to cultivate investments, clients, and harm and endanger the well-being of the Plaintiffs.

## COUNT 5: THEFT OF TRADE NAME AND DECEPTIVE TRADE PRACTICES

112.    The previous paragraphs are incorporated by reference.

113.    The gist of the tort of trademark infringement *is a consumer protection designed to eliminate confusion as to source*: it isn't so much an "intellectual property" as a patent, copyright or trade secret, but a passing off of one's goods or services as belonging to another and stealing their good will and loyalty/brand-preference.

114.    Trademark law is designed to protect the consumer goodwill which merchants develop through the use of trademarks and service marks; this goal is achieved by preventing would-be infringers from using similar marks  which could confuse consumers into thinking that these  goods or services originate from the original mark owner.

115.    A mark such as the trade name "Diermeier Consulting Associates" and "FirstSight" thus safeguards the owner's reputation in the marketplace as well as the value of the owner's advertising dollar.

116.     By Mr. Russ Rosenzweig using Plaintiffs' trade   names and holding himself out to be a CFO of FirstSight B and misrepresenting the ownership of FirstSight B, it was the aim to confuse consumers into thinking that these services originate from Diermeier Consulting Group and / or FirstSight, when this was not the case.

117.     Mr. Russ Rosenzweig bbrazenly holding oneself out  as representing a company that one does not is the usual path of trade name infringement case, but it goes more quickly to the core values being violated (not deceiving consumers into thinking that the services come from a  source enjoying goodwill when in fact the serviced do not come from that source of good will).

118.     Trademark infringement usually take place, where,  an  entity  uses  a trade  name  (a  species  of trade mark) in a confusingly similar manner to another source of goods or services—of course, this more brazen form of trademark infringement is steal the identical name, and pass one's self off as being from a particular company that enjoys goodwill in the marketplace (FirstSight and Diermeier Consulting Associates) with a specific intent to deceive the customer.

119.     A common law trademark provides protection for a symbol, logo, product name, or other words or marks that identify the source of goods or services before it is registered with the state or federal government.

120.     Here, FirstSight and Diermeier Consulting Associates are common law

trade names   and Mr. Russ Rosenzweig engaged in willful, intentional, and

knowing infringement by using the FirstSight name with express intention of

passing himself off as being a member (particularly the Chief Financial Officer)

of FirstSight.

121.     Intentionally passing off your consulting services of that of another

consulting company to which you are not an owner or an employee or have

any propriety interest, as happened here under the facts herein described, is

about a brazen a form of trademark infringement as there can be.


122.     Mr. Russ Rosenzweig's intentionally holding one's self out to be of

FirstSight Group when he did not own, was not member of it, and was not

employee or officer or agent or board member of FirstSight Group patent

misappropriate of the corporate name,   much more common than your typical

case of trade mark and/or trade name infringement, and is the acme of stealing

the goodwill of another corporation by   causing confusion as to source.


123.     The reason why Mr. Russ Rosenzweig conduct is   much more patent,

is usually a good or service provider picks a name or mark that happens to be

deceptively similar to another mark: it is the unusual case where the person is

trying to actually palm his good or services off as that as another with a purpose

effort to deceive, which is what happened here.

124.    In the instant case, Mr. Russ Rosenzweig did the consulting equivalent of putting a Gucci label   on an imposter bag: he held himself as working for Diermeier Consulting Associates and FirstSight (even going so far as holding himself out to be the Chief Financial Officer) and having used its trade name in a brazenly false and deceptive manner with the intended purpose of causing deception as to source, violated the tradename of FirstSight causing damages: because there was such a brazen effort of intentionally deceiving, punitive damages are sought and requested.

125.    Moreover, by misappropriating the   Diermeier Consulting Associates and FirstSight name, palming   himself off as a member of FirstSight, and then performing horribly as a consultant, Mr. Russ Rosenzweig did damage to the FirstSight name and goodwill, and that frankly of all the Plaintiffs.

126.    By deceitfully holding himself out to be the Chief Financial Officer of FirstSight, and then performing miserably as a consultant, especially but not limited to Wells-Fargo, he has damaged the

business reputation of all the defendants.

## COUNT 6: INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP AND TORTIOUS INTERFERENCE WITH CONTRACT

127.    The previous paragraphs are incorporated by reference.

128.     Paragraph 2 of Rosenzweig's contract (The Confidential Disclosure

Agreement), which Rosenzweig signed, specified:

> "**Confidential Treatment.** Recipient shall maintain the
> Confidential Information in secrecy and will use best efforts to
> prevent its disclosure to third parties. Recipient shall limit the
> internal disclosure of the Confidential Information to only those
> employees, colleagues, or affiliates to whom it is necessary to
> disclose it for Recipient to perform its obligations hereunder,
> and all such employees, colleagues and affiliates shall
> themselves have an obligation of confidentiality to Recipient,
> with respect to which obligation Disclosing Party shall be
> deemed a third-party beneficiary."

129.     The "Recipient" under the Confidential Disclosure Agreement was Mr.

Russ Rosenzweig.

130.     The "Disclosing Party" under the Confidential Disclosure Agreement

was 63 Partners, LLC and Paul Del Gallo.

131.     Paragraph 3 of the Confidential Disclosure Agreement which Mr.

Russ Rosenzweig signed specified:

> "**No Interest Created.** The disclosure of Confidential
> Information by Disclosing Party to Recipient shall not be deemed
> to create in Recipient any ownership or other proprietary interest
> in the Confidential Information, including but not limited to a
> license, other than the implied license necessary for Recipient to
> perform its duties pursuant to the consulting relationship. Without
> limiting the generality of the foregoing, Recipient shall not use the
> Confidential Information to develop any proprietary products and
> shall not incorporate any of the Confidential Information, or the
> fruits of its use thereof, into any patent application or other trade
> secret claimed by Recipient. Disclosing Party shall retain all
> proprietary and intellectual property rights to the Confidential
> Information and the uses thereof."

132.     And to make clear that the assets were to be returned paragraph 5 stated:

> "**Return.** Following the termination or expiration of Recipient's evaluation of the Confidential Information, Recipient shall return the Confidential Information to Disclosing Party and shall not retain any copies, descriptions, or summaries thereof." Mr. Russ Rosenzweig never returned any of the assets. Since April 17, 2017 Mr. Russ Rosenzweig has used trade and confidential information from Plaintiffs for his own financial benefit."

133.     Mr. Russ Rosenzweig used the confidential "Pipeline Reports" to obtain Plaintiffs Clients and potential clients.

134.     Mr. Russ Rosenzweig separately contacted and acquired Plaintiffs clients.

135.     This included Aqua Andinas, E.N.E.L, Wells Fargo, and several others.

136.     Mr. Russ Rosenzweig also tortuously interfered with the business relationship of the Plaintiffs with Tomas Bilbao, a long-time business contract of the Plaintiffs.

137.     Mr. Russ Rosenzweig interfered with the business being cultivated by Mr. Tomas Bilbao in several countries.

138.     The ownership of these accounts was abundantly clear, Mr. Rosenzweig did not speak the language the accounts were booked in.

139.     Mr. Russ Rosenzweig interfered with the contracts and business of four

other of the Plaintiffs relationships, each of which Mr. Russ Rosenzweig has

converted for his own purposes: These include Randy Stevenson, Jean Egmon,

Ekkart Kaske,   and Francisco Procheska.

140.     Plaintiffs have a tangible interest in the outcome of the dispute as they

have enforced the agreement on or about August 2018 with Mr. Russ

Rosenzweig, who continues to cultivate investments, clients, and harm and

endanger the well-being of the Plaintiffs.

## COUNT 7: UNFAIR COMPETITION AND/OR DECEPTIVE PRACTICES

141.     The previous paragraphs are incorporated by reference.

142.     Unfair competition can be accomplished by **false advertising**: while

typically the consumer is   considered the "victim," a victim who *also* has

standing to sue is a corporation that lost business because the defendant Mr.

Russ Rosenzweig, as happened here, falsely advertised (by means of phone

calls and personal contacts) that he was actually a shareholder in the Plaintiffs'

businesses thus causing them lost business opportunities, as happened here.

143.     The **unauthorized substitution of one brand of services for another**

is a form of unfair trade practice, to which under the facts previously described,

the defendant Mr. Russ Rosenzweig has run afoul causing tortious injury to the

plaintiff by holding himself out to be the Chief Financial Officer of FirstSight,

for which there were damages in lost business and injury to reputation when

the Defendant performed poorly after palming himself to be the Plaintiff when

he knew he was not.

144. **The misappropriation of confidential information to solicit customers** as Mr. Russ Rosenzweig did is a form of unfair trade practices, to which the defendant is guilty, by so using the Confidential Information of the Confidential Disclosure Agreement to steal the Plaintiffs' own clients, for which there were damages in lost business and injury to reputation when the Mr. Mr. Russ Rosenzweig performed poorly after palming himself to be the FirstGroup when he knew he was not.

145. **Theft of trade secrets** is a form of unfair competition whereby the Confidential Information misappropriated by the Defendant as described constitutes such theft, for which there were damages in lost business and injury to reputation when the Mr. Russ Rosenzweig performed poorly after palming himself to be the Plaintiff when he knew he was not.

   a. Since April 17, 2017 Mr. Russ Rosenzweig has transferred the clients, client confidential information, confidential information, trade secrets, and other intangible assets of the Plaintiffs which are protected by the Confidential Disclosure Agreement and/or which betrayed the understood confidences of the Plaintiffs and to which the Defendant had a duty to protect.

   b. This included the use of confidential information and its dissemination to a firm which Mr. Russ Rosenzweig is involved "SVII".

   c. SVII used and disseminated this Confidential Information to build a separate and fraudulent business, SVII and in doing so breached the Confidential Disclosure Agreement including and especially (but not limited to) the "No Interest Created" clause.

146.     Mr. Russ Rosenzweig claimed ownership of the Intellectual Property in one of his firms.

147.     Mr. Russ Rosenzweig solicited investment on the Confidential Information claiming under Representations and Warranties that he was the owner of the Intellectual Property.

148.     A *breach of a restrictive covenant* to not use confidential information is an unfair trade practice, as happened here as described elsewhere in this complaint, which is an unfair trade practice, for which there were damages in lost business and injury to reputation when Mr. Russ Rosenzweig performed poorly after palming himself to be the Plaintiff when he knew he was not

149.     The use of a Plaintiffs' trade name or other trademark, as happened here is an unfair trade practice, as happened here when Mr. Russ Rosenzweig held himself to be the Financial Vice President of  FirstSight.

150.     Pursuant to Mass. Gen. L. c. 93A, §11,

> "Any person who engages in the conduct of any trade or  commerce[19]  and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared   unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty- five C, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an   injunction, as the court deems to be necessary and proper

---

[19] Pursuant to Section 1 of Mass. Gen. L. c. 93A, ""Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth

151.     As can be seen, Section 9 of Chapter 93A is for consumers, and Section 11 is for regular actors in trade.

152.     Section 9 of Chapter 93A refers to "Any person, *other than a person entitled to bring action under section eleven of this chapter . . .*" Section 9 goes on to describe demand letters which are a part of consumer protection.

153.     Section 11 of Chapter 93A, that which is   explicitly excluded from Section 9, refers to "*Any person who engages in the conduct of any trade or commerce and who suffers any loss* of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared   unlawful by section two"—thus it clearly applies to people engaging in the conduct of a trade as opposed to a regular consumer.

154.     People in business, i.e, "engages in the conduct of any trade or commerce" fall under Section 11 of Chapter 93A, as opposed to simply being a consumer as contemplated in Section 9

155.     Lawsuits under Section 11, usually big business torts by people in commerce, do not require "demand letters" as do the consumer protection provisions of Section 9.

156.      Under Section 11 of Chapter 93A, "*Any person who engages in the conduct of any trade or commerce*[20] and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court,[21] or in the housing court as provided in section three of chapter one hundred and eighty- five C, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an   injunction, as the court deems to be necessary and proper."

157.      Here, the Plaintiffs, Paul Del Gallo, Diermeier Consulting Associates a/k/a FirstSightGroup, a Delaware Limited Liability Company, 63 Partners, a Delaware Limited Liability Company are engaged in the conduct of any trade or commerce of business consulting.

158.      Pursuant to Section 2(a) of Chapter 93A, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful," and such "Unfair methods of competition and unfair or deceptive acts" include the aforementioned:

---

[20] As such language, Section 11 is designed for merchants or those in commerce, such a consultant, who has been aggrieved by another's false and deceptive acts. Since section 9 excludes those in Section 11 (those in commerce), it indirectly relates to regular consumers, being "Any person, other than a person entitled to bring action under section eleven of this chapter (i.e., other than a merchant or person in commerce). It is an way of saying that Section 9 is for consumers not in trade, but ultimately that is what it stands for. By default, section 9 is for actions by regular consumers, whereas Section 11 is explicitly for business torts for unfair or deceptive trade where the victim is a person in trade or commerce. If someone sells you a Gucci bag when it is not, they sue under Section 9. If you are Gucci, you sue under Section 11.

21 This also provides subject matter jurisdiction.

a. Mr. Russ Rosenzweig's misappropriation of the Confidential Information in the Confidential Disclosure Agreement as described herein for his own benefit to the detriment of the plaintiffs.

b. The false advertising or otherwise "palming off" by Russ Rosenzweig as herein described, by claiming to be a member, owner, and even a Chief Financial Officer of First Sight Consulting when he was not (and also misappropriating the FirstSight trade name in doing so), causing both economic loss  by lost business to the Plaintiffs' and  causing injury to their reputation when Russ Rosenzweig performed miserably, especially, but not limited to, his work with Well-Fargo, where his shortcomings as a consultant caused loses of epic proportions.

c. Mr. Russ Rosenzweig's  unauthorized substitution of one brand of services for another, to which under the facts previously described, the defendant Mr. Russ Rosenzweig holding himself  out to be the Chief Financial Officer of FirstSight, for which there were damages in lost business and injury to reputation when  Mr. Russ Rosenzweig performed poorly after palming himself to be the Plaintiff when he knew he was not.

d. Mr. Russ Rosenzweig's misappropriation of confidential information (the Confidential Information of the Confidential Disclosure Agreement) to solicit customers, by so using  the Confidential Information of the Confidential Disclosure Agreement to steal the Plaintiffs' own clients, for which there were damages in lost business and injury to reputation when Mr. Russ Rosenzweig performed poorly

Averred Complaint, PAGE 52

after palming himself to be the Plaintiff when he knew he was not.

e. Mr. Russ Rosenzweig's theft of trade secrets whereby the Confidential Information misappropriated by Mr. Russ Rosenzweig as described constitutes such theft of  trade secrets and confidential information, for which there were damages in lost business and injury to reputation when Mr. Russ Rosenzweig performed poorly after palming himself to be the Plaintiff when he knew he was not.

f. Mr. Russ Rosenzweig's breach of a restrictive covenant to not use confidential information is an unfair trade practice, as happened here as described elsewhere in this complaint, which is an unfair trade practice, for which there were damages in lost business and injury to reputation when Mr. Russ Rosenzweig performed poorly after palming himself to be the Plaintiff when he knew he was not

g. Mr. Russ Rosenzweig's misappropriation of the trade name FirstSight and Diermeier Consulting Associates  so as to cause confusion as to the source of the services, as previously described: Mr. Russ  Rosenzweig held his consulting to be that of  Diermeier Consulting Associates and FirstSight, further falsely maintaining that he was a Chief Financial Officer of FirstSight, with said misappropriation of the trade name part of a conscientious plot to deceive clients and steal business from the Plaintiffs.

159.     Pursuant to Section 11 of Chapter 93A, "If   the court finds for the

petitioner, recovery shall be in the amount of actual damages; or up to three,

but not less than two, times such amount if the court finds that the use or

employment of the method of competition or the act or practice was a willful

or knowing violation of said section two."

160.     Here,   ***treble    damages    are    sought***,     because Mr.

Russ Rosenzweig's conduct was a deliberate effort to commit fraud upon his

consulting clients by fraudulently portraying himself as the Chief Financial

Officer of FirstSight in order to get business from third parties, misrepresented

the ownership of FirstSight in order to get business from third parties,

fraudulently represented himself as having served FirstSight's clients in order

to get business from third parties, and misrepresented himself as owning or

having rights to the intellectual property of Plaintiffs' (including but not limited

to the Confidential Information in the Confidential Disclosure Agreement) in

order to get business from third parties—while this was certainly fraud upon

his clients, it was unfair and deceptive trade wherein the Plaintiffs(Paul Marc

Del Gallo in his personal capacity, Diermeier Consulting Associates  a/k/a

FirstSightGroup,  63  Partners)  all were injured. On or about September 17,

2017 a memo Titled "Content, Revenue Generators, and Clients" was sent to

Russ Rosenzweig and 14 other recipients. This memo clearly memorialized the

relationships of the parties and was never challenged by Russ Rosenzweig. In

this Russ Rosenzweig removed any and all doubt of his intent to commit fraud.

161.     Common law actions are hereby brought for the unfair trade practices described above, in addition to statutory relief that may be available.

## COUNT 8: FRAUD PERPETRATED ON CLIENTS, WHICH CAUSED INJURY TO PLAINTIFF

162.     The previous paragraphs are incorporated by reference.

163.     The tort of fraud is committed when a representation was made, the representation was false, that when made, the defendant knew that the representation was false or that the defendant made the statement recklessly without knowledge of its truth, that the fraudulent misrepresentation was

Made with the intention that others rely on it, that the fraudulent misrepresentation was relied upon, that the plaintiff suffered harm as a result of the fraudulent misrepresentation.

164.     Here, Mr. Russ Rosenzweig's conduct was a deliberate effort to commit fraud upon his consulting clients by fraudulently portraying himself as the Chief Financial Officer of FirstSight in order to get business from third parties.

165.     Mr. Russ Rosenzweig's misrepresented the ownership of FirstSight in order to get business from third parties, holding himself and others to be owners when he and they were not, which caused Plaintiff to lose business and to have the reputation of their businesses injured.

166.     Mr. Russ Rosenzweig fraudulently represented himself as having

served FirstSight's clients in order to get business from third parties.

167.     Mr. Russ Rosenzweig's misrepresented himself as owning or having rights to the intellectual property of Plaintiffs' (including but not limited to the Confidential Information in the Confidential Disclosure Agreement) in order to get business from third parties.

168.     While the aforementioned fraud of the several previous paragraphs were certainly fraud upon his clients, it was also a fraud wherein the Plaintiffs (Paul Marc Del Gallo in his personal capacity, Diermeier Consulting Associates a/k/a FirstSightGroup, 63 Partners) all were injured because the fraud on the clients perpetrated by Mr. Russ Rosenzweig caused the Plaintiffs to lose business and have their reputations damaged when Mr. Russ Rosenzweig performed miserably as a consultant.

169.     Because Mr. Russ Rosenzweig's fraud to clients caused economic loss and other injury to the Plaintiffs, the Plaintiffs have standing to sue for the fraud for the fraud Mr. Russ Rosenzweig perpetrated on his clients, knowingly pretending to the be the Plaintiffs when he knew he was not.

170.     Paragraph 2 of Rosenzweig's contract, which he signed, specified: "**Confidential Treatment.** Recipient shall maintain the Confidential Information in secrecy and will use best efforts to prevent its disclosure to third parties. Recipient shall limit the internal disclosure of the Confidential Information to only those employees, colleagues, or affiliates to whom it is necessary to disclose it for Recipient to perform its obligations hereunder, and

all such employees, colleagues and affiliates shall themselves have an obligation of confidentiality to Recipient, with respect to which obligation Disclosing Party shall be deemed a third-party beneficiary.

171.    Paragraph 3 of the Confidential Disclosure Agreement which Mr. Russ Rosenzweig signed specified: "**No Interest Created.** The disclosure of Confidential Information by Disclosing Party to Recipient shall not be deemed to create in Recipient any ownership or other proprietary interest in the Confidential Information, including but not limited to a license, other than the implied license necessary for Recipient to perform its duties pursuant to the consulting relationship. Without limiting the generality of the foregoing, Recipient shall not use the Confidential Information to develop any proprietary products and shall not incorporate any of the Confidential Information, or the fruits of its use thereof, into any patent application or other trade secret claimed by Recipient. Disclosing Party shall retain all proprietary and intellectual property rights to the Confidential Information and the uses thereof.

172.    And to make clear that the assets were to be returned paragraph 5 stated: "**Return.** Following the termination or expiration of Recipient's evaluation of the Confidential Information, Recipient shall return the Confidential Information to Disclosing Party and shall not retain any copies, descriptions, or summaries thereof." Mr. Russ Rosenzweig never returned any of the assets.

173.     Mr. Russ Rosenzweig altered the general ledgers of   the Plaintiffs books and records so as to perpetuate a fraud. Specifically, Mr. Rosenzweig redirected expense reimbursements to bank accounts and payees contrary to written instructions. Mr. Rosenzweig did so in order to attempt to portray the clients of the Plaintiffs as Rosenzweig's clients.

174.     Mr. Russ Rosenzweig committed a wire fraud when depositing amounts into bank accounts directly in contradiction to a stated audit trail memorandum.

175.     This altering of the general ledgers and wire fraud directly impacted the Plaintiffs, particularly those of Diermeier Consulting Associates.

176.     Mr. Russ Rosenzweig committed a fraud when he falsely represented himself as the Chief Financial Officer of FirstSight. That false claim facilitated his altering of the General Ledgers and commission of the wire fraud.

177.     Mr. Russ Rosenzweig committed a fraud when he entered compensation for himself on a line of credit for FirstSight B.

178.     Mr. Russ Rosenzweig committed a fraud when he altered and padded a financial debt instrument of FirstSight B. LLC.

179.     Mr. Russ Rosenzweig committed a fraud when he removed and used the

Intellectual Property of the Plaintiffs.


180.     In early 2018, 63 Partners LLC reported these frauds committed by

Rosenzweig to the Security and Exchange Commission.


181.     These frauds, including the altering of general ledgers and wire frauds, also caused

damage to the Plaintiffs' by way of lost business, impairment of confidential information

including intellectual property, and damage to business reputation.


## COUNT 9: FRAUD PERPETRATED ON PLAINTIFFS DIRECTLY

182.     The previous paragraphs are incorporated by reference.

183.     Apart from Mr. Russ Rosenzweig perpetrating clients on the would be

or actual *clients* of Paul Marc Del Gallo in his personal capacity, Diermeier

Consulting Associates a/k/a FirstSightGroup, 63 Partners, he perpetrated

several frauds directly on the Plaintiffs' themselves (Paul Marc Del Gallo in

his personal capacity, Diermeier Consulting Associates a/k/a FirstSightGroup,

63 Partners).

184.     Mr. Russ Rosenzweig made a misrepresentation at the time of the

formation of Confidential Disclosure Agreement Rosenzweig that Mr. Russ

Rosenzweig would direct business to plaintiffs and not take it for himself or

direct it elsewhere: he knew he would not when he made the agreement.

185.     Here Mr. Russ Rosenzweig represented that he was a consultant working for the Plaintiffs, that he was a Chief Financial Officer of one of the Plaintiffs, that he was authorized to perform financial transactions for the plaintiffs, fully knowing this was false or at the very least, recklessly made.

186.     Mr. Russ Rosenzweig presented himself to his collogues as owning the confidential information subject to this contract.

187.     On information and belief this included soliciting investments for his benefit as "owned" by himself and his colleagues.

188.     Mr. Russ Rosenzweig was unable to complete the acquisition which was actually a false offer used to acquire Plaintiffs' assets.

189.     In direct and tortuous violation of the agreement, Mr. Russ Rosenzweig converted the confidential information of the Plaintiffs to himself and numerous shell companies

he controls.

190.     The Plaintiffs' assets are of extraordinary value, including proprietary methodologies, intellectual property, intellectual property cross licenses, Client trade secrets  and confidential information, sales leads, client rights, and other assets.

**COUNT 10: INTERFERENANCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP/INTERFERENCE WITH CONTRACT**

191.    The previous paragraphs are incorporated by reference.

192.    To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

193.    Plaintiffs held over 250 individual contracts with clients, including master service agreements, scientists to produce intellectual property, consultants, "rainmakers" sales staff, other consulting firms, and other firms supplying services: these aforesaid assets had harvested Plaintiffs' almost $8,000,000 in revenue over time and were profitable.

194.    By Mr. Russ Rosenzweig breaching the confidentiality and stealing Plaintiffs' clients for Mr. Russ Rosenzweig firms, as well as the false representations made by Mr. Russ Rosenzweig, Plaintiffs' sales fell 90% in 2017 and 50% in 2018.

195.    Plaintiffs have learned that Mr. Russ Rosenzweig redirected over $1,400,000 in client revenue and over $6,000,000 in potential client revenue that belong to the Plaintiffs to firms Mr. Russ Rosenzweig controls.

196.     Most of Russ Rosenzweig's attempts to serve these    clients failed, resulting in loss of employee, rainmaker, and client relationships that have now been terminated, setting Plaintiffs back years.

197.     Mr. Russ Rosenzweig not only acquired and used the Confidential Information of the Plaintiffs that was protected by the Confidential Disclosure Agreement, Mr.  Russ Rosenzweig interfered directly with the    business relationships of the Plaintiffs with their clients, thereby causing damages to the Plaintiffs.

198.     Mr. Russ Rosenzweig has made it impossible for the members of the Plaintiff organizations to operate without interference, which has included Mr. Russ Rosenzweig discrediting and falsifying the contractual relationships of the parties.

199.     Mr. Russ Rosenzweig has made it impossible for the Plaintiffs to conduct their business with their clients   casting doubt onto the veracity of the Plaintiffs business model.

## COUNT 11: SPECIFIC ENFORCEMENT OF CONTRACT, EQUITABLE RELIEF SOUGHT AND REQUEST FOR SPECIFIC PERFORMANCE AND OTHER EQUITABLE RELIEF

200.     The previous paragraphs are incorporated by reference.

201.     When there is a breach of contract, the aggrieved party may seek the equitable remedy of specific performance, that is, a court order compelling the breaching party to undertake to perform or to complete performance of such party's obligations under the contract.

202.     Pursuant to the first sentence of the Confidential Disclosure Agreement,

63 Partners, LLC and Paul Del Gallo together, were designated the "Disclosing

Party," and reference to "Disclosing Party" in the complaint refers to them.

203.     Pursuant to the first sentence of the Confidential Disclosure Agreement,

Mr. Russ Rosenzweig was the "Recipient."

204.     Pursuant to Paragraph 6 of the Confidential Disclosure Agreement:

> 6.     **Remedies.**     The parties recognize and agree that an
> action for damages would be inadequate to enforce the
> restrictions of this Agreement.         Recipient's violation of
> this agreement will cause immediate and irreparable harm and
> unascertainable damages to Disclosing Party, and that the
> balance of equities strongly favors the grant of injunctive relief
> to prevent or stop its breach.         The parties agree that
> Disclosing Party shall be entitled as a matter of right to
> temporary, preliminary, and permanent injunctive relief from a
> court of competent jurisdiction restraining any actual or
> threatened violation of this Agreement.   The right to injunctive
> relief shall be in addition to, and not in lieu of, all other rights
> and remedies of Disclosing Party under this Agreement, by
> statute, at law, in equity, or otherwise.

205.     Among other relief sought, the plaintiffs seek specific performance of

the "Remedies" section embodied in Section 6 of the Confidential Disclosure

Agreement.

206.     As discussed, the Confidential Disclosure Agreement's paragraph 6 makes clear Mr. Russ Rosenzweig's "violation of this agreement will cause immediate and irreparable harm  and unascertainable damages to Disclosing Party, and that the balance of equities strongly favors the grant of injunctive relief to prevent or stop its breach," and this court should so likewise rule to specifically enforce the agreement.

207.     It is submitted, and prayed as relief, that  Mr. Russ Rosenzweig should be enjoined from maintain that violation of this agreement will not cause immediate and irreparable harm, for that would violate the specific terms for performance of the Confidential Disclosure Agreement.

208.     As discussed, the Confidential Disclosure Agreement paragraph 6 makes clear that "[t]he parties agree that Disclosing Party shall be entitled as a matter of right to temporary, preliminary, and permanent injunctive  relief from a court of competent jurisdiction restraining any actual or threatened violation of this Agreement," and this court should so likewise rule to specifically enforce the agreement, and issue temporary, preliminary, and permanent injunctive relief to:

- stop future use of the Confidential Information in the Confidential Disclosure Agreement,

- to order Mr. Russ Rosenzweig from holding himself to be associated with the Plaintiffs,

- to order Mr. Russ Rosenzweig to take corrective measures by forming all the individuals he contacted and held out to be the plaintiffs that he is not associated with  them;

- to order Mr. Russ Rosenzweig to notify all those that he contacted and disclosed or otherwise used any of the confidential information that any information he  provided with respect to the Confidential Information  was a violation of the Confidential Disclosure Agreement and that if there use of the Confidential Information would constitute misappropriation of confidential information and/or trade secrets;

- to order Mr. Russ Rosenzweig to disclose to plaintiffs in writing whom he contacted with respect to the confidential information and disclose all entities, corporations, partnerships, or individuals along with their

  (a)   names

  (b)   address

  (c)   phone number

  (d)   e-mail

  (e)   with particularity, what Confidential Information was disclosed to this entity, corporation, partnerships, or individual.

- to order Mr. Russ Rosenzweig to disclose to plaintiffs in writing whom he held out to be a member of FirstSight Group or any of the Plaintiffs, including their

  (f)   names

  (g)   address

  (h)   phone number

  (i)   e-mail

  (j)   the relationship he claimed to have had with any of the Plaintiffs.

- to order Mr. Russ Rosenzweig to disclose to plaintiffs to disclose what Confidential Information (as defined by the Confidential Disclosure Agreement) was provided to what individual including the name of the individual, the company of the individual, and phone, e-mail and contact information of the individual;

- to order Mr. Russ Rosenzweig to immediately return all Confidential Information and to destroy all copies of any sort or kind of the Confidential Information;

- to order Mr. Russ Rosenzweig to return the Confidential Information to the Plaintiffs and to not retain any copies, descriptions, or summaries thereof.

209.     Mr. Russ Rosenzweig not only hams the Plaintiffs through his brazen disregard of the

Confidential Disclosure Agreement, he endangers Plaintiffs with litigation and loss of business

with Clients Investors, Employees and others.

210.     Despite numerous demands and letters from Plaintiffs and house counsel, Mr. Russ

Rosenzweig continues to openly violate the Confidential Disclosure Agreement.

211.     Plaintiffs' only recourse is with this court.

212.     This civil action seeks two forms of immediate relief: (1) a declaration that Mr. Russ

Rosenzweig has violated the Agreement causing irreparable harm and damage to Plaintiffs and;

(2) an injunction that prevents  Defendant and any company he works with or has an interest

in, from continuing to use any of the intellectual property, clients, client confidential

information, company confidential data, personal confidential data,  employee confidential

information, and all confidential information of any of Mr. Russ Rosenzweig's, past or future.

Plaintiffs also seeks an eventual finding that Defendant and his companies  are  liable  for

tortious  interference  with prospective economic advantage

213.     To facilitate the deal Rosenzweig signed a Confidential Disclosure ("Agreement") dated

as of April 17, 2017 among 63 Partners, LLC and Paul Del Gallo (together, "Disclosing

Party") and Mr. Russ   Rosenzweig ("Recipient").

214.     Whereupon the defendant, Mr. Russ Rosenzweig, contracted with the plaintiffs (Paul

Del Gallo, Diermeier Consulting Associates a/k/a FirstSightGroup, a Delaware Limited

Liability Company and 63 Partners, a Delaware Limited Liability Company

215.   The unfair trade practices are for violating or otherwise misappropriating numerous

intellectual property rights of the plaintiffs (which are protected by contract) including:

    a. Propriety methodologies (which constitute a type of trade secret)

    b. Employee confidential information

    c. intellectual property, intellectual property cross licenses, Client trade secrets and

       confidential information, sales leads, client rights, and other assets.

    d. "Confidential Information" includes without limitation all information,

       whether written

    e. or oral and in any form (e.g., blueprints, drawings, photographs, charts, graphs,

       notebooks, customer lists,

    f. computer disks, tapes, computer hard drives, CD ROMS, or printouts,

       sound recordings and or other

    g. digital, printed, typewritten or handwritten documents, sample products,

       prototypes and models and any

    h. information recorded in any other form whatsoever), relating to any of the

       Disclosing Parties' research,

    i. development, products, methods of manufacture, trade secrets, inventions,

       business plans, customers,

    j. investors, vendors, finances, personnel data, work product, intellectual

       property and other material or

    k. information considered proprietary by any of the Disclosing Parties relating

       to the current or anticipated

Averred Complaint, PAGE 68

l. business or affairs of any of any of the Disclosing Parties.

Confidential Information also includes any

m. proprietary or confidential information of any Disclosing Party's clients disclosed to

Rosenzweig by any party.

216.      Rosenzweig has and continues to violate this contract and despite the repeated efforts

and demands of 63 Partners, Diermeier Consulting Associates and Paul Del Gallo,

Defendant continues to cause irreparable harm and damage to the plaintiffs.

## COUNT 12: REQUEST FOR DECLARATORY RELIEF

217.      The previous paragraphs are incorporated by reference.

218.      Under Chapter 231A, Section 1. The supreme judicial court, the superior court, the

land court and the probate courts, within their respective jurisdictions, may on appropriate

proceedings make binding declarations of right, duty, status and other legal relations sought

thereby, either before or after a breach or violation thereof has occurred in any case in

which an actual controversy has arisen and is specifically set forth in the pleadings and

whether any consequential judgment or relief is or could be claimed at law or in equity or

not; and such proceeding shall not be open to objection on the ground that amerely

declaratory judgment or decree is sought thereby and such declaration, when made, shall

have the force and effect of a final judgment or decree and be reviewable as such."

219.     Under Chapter 231A, Section 2, "The procedure under section one may be used to

secure determinations of right, duty, status or other legal relations under deeds, wills or

written contracts or other writings constituting a contract or contracts or under the common

law." That said, it was added, "The foregoing enumeration shall not limit or restrict the

exercise of the general powers conferred in section one in any proceeding where declaratory

relief is sought, in which a judgment or decree will terminate the controversy or remove an

uncertainty."

220.     By issuing declaratory relief, the uncertainty or controversy giving rise to the

proceedings will be removed as to whether the defendant Mr. Russ Rosenzweig has or ever

had an ownership interest of the Plaintiff corporations, whether the defendant Mr. Russ

Rosenzweig actually represents or once represented the Plaintiff corporations, whether the

defendant Mr. Russ Rosenzweig was an officer including but not limited to a Chief

Financial Officer of the Plaintiff corporations, whether Mr. Russ Rosenzweig owns or is a

licensee of the Confidential Information of the Plaintiffs, whether Mr. Russ Rosenzweig

has misappropriated said confidential information: these declarations would be of

tremendous value to the Plaintiffs.

221.     As stated previously, Paragraph 3 of the Confidential Disclosure Agreement which

Mr. Russ Rosenzweig signed specified:

"**No Interest Created.**       The disclosure of Confidential Information by
Disclosing Party to Recipient shall not be deemed to create in Recipient any
ownership or other proprietary interest in the Confidential Information,
including but not limited to a license, other than the implied license
necessary for Recipient to perform its duties pursuant to the consulting
relationship. Without limiting the generality of the foregoing, Recipient shall
not use the Confidential Information to develop any proprietary products
and shall not incorporate any of the Confidential Information, or the fruits of
its use thereof, into any patent application or other trade secret claimed by
Recipient. Disclosing Party shall retain all proprietary and intellectual
property rights to the Confidential Information and the uses thereof."

222.       This court should declare that "Mr. Russ Rosenzweig has no ownership or other

proprietary interest in the Confidential Information

of the Confidential Information of paragraph 1 of the Confidential Disclosure

Agreement."

223.       This court should declare that Mr. Russ Rosenzweig has no ownership or other

proprietary interest in Diermeier Consulting Associates a/k/a FirstSightGroup, and has

never lawfully represented them.

224.       This court should declare that Mr. Russ Rosenzweig has no ownership or other

proprietary interest in 63 Partners, and has never lawfully represented the Plaintiffs, so that

the Plaintiffs will have the ability to so notify clients of this declaration.

225.       This court should declare that Mr. Russ Rosenzweig wrongfully used and

misappropriated the Confidential Information to develop his own proprietary products, so

that the Plaintiffs will have the ability to so notify clients of this declaration.

Averred Complaint, PAGE 71

## REQUEST FOR PERMANENT INJUNCTIVE RELIEF AND FOR IMMEDIATE TEMPORARY INJUNCTION AS PROVIDED BY THE CONTRACT

226.     The previous paragraphs are incorporated by reference.

227.     Plaintiffs have a tangible interest in the outcome of the dispute as they have enforced

the agreement on or about August 2018 with

Rosenzweig, who continues to cultivate investments, clients, and harm and endanger the

well-being of the Plaintiffs.

228.     Plaintiffs have a likelihood of success on the merits of their claim that Mr. Russ

Rosenzweig has breached the Confidential Disclosure Agreement.

### FURTHER REQUEST FOR RELIEF

229.     The previous paragraphs are incorporated by reference.

230.     Nothing in this paragraph section should be interpreted that the previous request for

relief should not be granted or are somehow fully described here as opposed to the

previous request of previous paragraphs.

231.     Plaintiffs respectfully request that this Honorable Court grant declaration that the

Defendant, Mr. Russ Rosenzweig has violated the Agreement causing irreparable harm

and damage to Plaintiffs, has no ownership interest in the Plaintiffs, and was never

authorized nor had apparent or actual authority to represent the Plaintiffs, and that he

misappropriate the Confidential Information of the Plaintiffs.

Averred Complaint, PAGE 72

232.    In addition to the injunctive relief previously described, plaintiffs respectfully request that this Honorable Court grant an injunction that prevents the Defendant Mr. Russ Rosenzweig and any company and/or other legal entity Mr. Russ Rosenzweig works with or has an interest in, from continuing to use any of the intellectual property, clients, client confidential information, company confidential data, personal confidential data, employee confidential information, and all confidential information of any of the Plaintiffs, past or future.

233.    Plaintiffs have a likelihood of success on the merits of their claim that Mr. Russ Rosenzweig has infringed on Trade Secrets of the Plaintiffs and hereby seek a Temporary Injunction.

234.    Plaintiffs respectfully request that this Honorable Court order the defendant Mr. Russ Rosenzweig to pay 30 million actual damages, 30 million punitive damages, court cost, cost of service, cost of production of documents, travel fees of any witness, attorney fees, and treble damages of the actual aforesaid damages, and any due interest.

235.    Plaintiffs respectfully request that this Honorable Court to order the specific performance of the contract, as previously described.

236.    Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ Rosenzweig to stop future use of the Confidential Information of the Confidential Disclosure Agreement.

237.    Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to stop holding himself to be associated with the Plaintiffs, or an employee or

officer of the Plaintiffs.

238.    Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to order Mr. Russ Rosenzweig to take corrective measures by forming all

the individuals he contacted and held out to be the plaintiffs that he is not associated

with them.

239.    Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to notify all those that he contacted and disclosed or otherwise used any of the

confidential information that any information he provided with respect to the Confidential

Information was a violation of the Confidential Disclosure Agreement and that if there use

of the Confidential Information would constitute misappropriation of confidential

information and/or trade secrets;

240.    Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to disclose to plaintiffs in writing whom he contacted with respect to the

confidential information and disclose all entities, corporations, partnerships, or individuals

along with their names, address, phone number (cell and office), e-mail, with great

particularity, what Confidential Information was disclosed to this entity, corporation,

partnerships, or individual.

241.     Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to order Mr. Russ Rosenzweig to disclose to plaintiffs in writing whom he held

out to be a member of FirstSight Group or any of the Plaintiffs, including their names,

address, phone number, e-mail, the relationship he claimed to have had with any of the

Plaintiffs.

242.     Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to disclose to plaintiffs to disclose what Confidential Information (as

defined by the Confidential Disclosure Agreement) was provided to what individual

including the name of the individual, the company of the individual, and phone, e-mail

and contact information of the individual.

243.     Plaintiffs respectfully request that this Honorable Court to order Mr. Mr. Russ

Rosenzweig to immediately return all Confidential Information and to destroy all copies

of any sort or kind of the Confidential Information and disclose where and how the

information was stored.

244.     To order Mr. Russ Rosenzweig to return the Confidential Information

to the Plaintiffs and to not retain any copies, descriptions, or summaries

thereof.

245.     This court should declare that "Mr. Russ Rosenzweig has no ownership or other

proprietary interest in the Confidential Information of the Confidential Information of

paragraph 1 of the Confidential Disclosure Agreement."

246.     This court should declare that Mr. Russ Rosenzweig has no ownership or other

proprietary interest in Diermeier Consulting Associates a/k/a FirstSightGroup and has

never lawfully represented them.

247.     This court should declare that Mr. Russ Rosenzweig has no ownership or other

proprietary interest in 63 Partners, and has never lawfully represented the Plaintiffs, so that

the Plaintiffs will have the ability to so notify clients of this declaration.

248.     This court should declare that Mr. Russ Rosenzweig wrongfully used and

misappropriated the Confidential Information to develop his own proprietary products, so

that the Plaintiffs will have the ability to so notify clients of this declaration.

249.     Mr. Russ Rosenzweig should be ordered by this court to cease and desist using any

of the Confidential Information of the Confidential Disclosure Agreement, to return it

immediately, to destroy all companies, and to notify all clients or other persons (be they

actual, corporate, or partnerships or other legal entity) that said Confidential Information to

which they were provided by the defendant Mr. Russ Rosenzweig was misappropriated

and properly belongs to the defendants.

250.    Mr. Russ Rosenzweig should be ordered by this court to disclose to the Plaintiff in

writing of any communication or use of the Confidential Information of the Confidential

Disclosure Agreement that he or his assignees or people that he communicated to partook

of, and should state under pains of perjury that it is a full and accurate and other wise

complete list disclosing:

a. The Confidential Information of the Confidential Agreement that was provided.

b. To whom it was provided, including name, phone number, e-mail, corporation or

partnership or other legal entity the person was working for when he received the

Confidential Information.

c. How the confidential information was used.

d. How the confidential information was transferred.

e. The location of all records of the confidential information that was transferred.

f. The full content of any contract he had with any person or entity that received the

Confidential Information protected by the Confidential Disclosure Agreement.

251.    Mr. Russ Rosenzweig should be ordered by this court to cease and desist

performing work for any of Plaintiff's present clients, past clients, or prospective clients.


252.    While this is being litigated, this court should issue a temporary injunction, and

then there should be a permanent injunction at final judgment.

253.     Plaintiffs respectfully request that this Honorable Court Order such other reliefs

and remedies as it deems fair and just, or which otherwise might have been overlooked

by the Plaintiffs.

Dated this May 20, 2020

_____

Rinaldo Del Gallo, III PO
Box 1082
Pittsfield, MA 01201
(413) 445-6789
BBO 632880
Rinaldo Del Gallo, III

# Commonwealth of Massachusetts

BERKSHIRE, SS.

SUPERIOR COURT
CIVIL ACTION
No.

Dicrmeier Consulting Associates
63 Partners
Paul DelGallo

, Plaintiff(s)

v.

Russ Rosenzwcig

, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon

Rinaldo DelGallo

, plaintiff's attorney,

whose address is 79 Nancy Ave. Pittsfield Ma 01201

an answer to the complaint which is herewith served upon you, within 20* days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Pittsfield either before service upon Plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Berkshire County Superior Court in the Civi A/ session without jury of our said court on Thursday the 13 th day of August A.D. 19 2020, at 2:00 o'clock P M., at which you may appear and show cause why such application should not be granted.

Witness, **Judith Fabricant** Esquire, at Pittsfield, the _____ day of _____, in the year of our Lord ~~XXXXXXXXXXXXXXXXXXXXXXX~~ 2018 .

Deharal S Capelen

Clerk

NOTES:

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

*If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

| NOTICE TO APPEAR FOR<br>Hearing on Preliminary Injunction | Docket Number<br><br>2076CV00094 | Trial Court of Massachusetts<br>The Superior Court | 🔵 |
|---|---|---|---|

| CASE NAME:<br>**Diermeier Consulting Associates Also Known As FirstSightGroup, A Delaware Limited Liability Company et al vs. Rosenzweig, Russ** | Deborah S. Capeless, Clerk of Courts |
|---|---|
| TO:<br><br>Paul M Del Gallo<br>79 Nancy Avenue<br>Pittsfield, MA 01201 | COURT NAME & ADDRESS<br><br>Berkshire County Superior Court<br>76 East Street<br>Pittsfield, MA 01201 |

The Court will hear the following event:

## Hearing on Preliminary Injunction

Counsel should appear as follows:

**Date:** 08/13/2020

**Time:** 02:00 PM

**Session/ Courtroom Location:** Civil A /

**FURTHER ORDER OF THE COURT:**

**Short Order of Notice returnable for Preliminary Injunction -- TO BE HEARD VIA TELECONFERENCE -- PLEASE CONTACT CLERK'S OFFICE FOR DETAILS**

**RESCHEDULED BY COURT FROM 08/10/2020**

A True Copy
Attest:
Clerk

| DATE ISSUED<br><br>07/23/2020 | ASSOCIATE JUSTICE | Deborah S. Capeless, Clerk of Courts |
|---|---|---|



## PLAINTIFF'S MOTION FOR IMMEDIATE 60 (a) RESTRAINING ORDER

HERE COMES Plaintiffs with their motion for a temporary restraining order under rule 60 (a) of Massachusetts rules of civil procedure.

1. On May 27, 2020 Paul Del Gallo (herein "Del Gallo") filed a complaint with this honorable court along with Plaintiffs Diermeier Consulting Associates (a/k/a FirstSightGroup), and 63 Partners LLC against Mr. Russ Rosenzweig (herein "Rosenzweig").

2. The complaint identifies irreparable harm being suffered by Plaintiffs, including fraudulent misrepresentations by Rosenzweig which defrauded clients and other third parties.

3. Paragraph 3 of the confidentiality agreement states clearly "No Interest Created. The disclosure of Confidential Information by Disclosing Party to Recipient shall not be deemed to create in Recipient any ownership or other proprietary interest in the Confidential Information, including but not limited to a license, other than the implied license necessary for Recipient to perform its duties pursuant to the consulting relationship. Without limiting the generality of the foregoing, *Recipient shall not use the Confidential Information to develop any proprietary products and shall not incorporate any of the Confidential Information, or the fruits of its use thereof, into any patent application or other trade secret claimed by Recipient. Disclosing Party shall retain all proprietary and intellectual property rights to the Confidential Information and the uses thereof.*" (emphasis added)

4. The contract in question makes clear in paragraph 6:
"**Remedies.** The parties recognize and agree that an action for damages would be inadequate to enforce the restrictions of this Agreement. Recipient's violation of this agreement will cause immediate and irreparable harm and unascertainable damages to Disclosing Party, and that the balance of equities strongly favors the grant of injunctive relief to prevent or stop its breach. The parties agree that Disclosing Party shall be entitled as a matter of right to temporary, preliminary, and permanent injunctive relief from a court of competent jurisdiction restraining any actual or threatened violation of this Agreement. The right to injunctive relief shall be in addition to, and not in lieu of, all other rights and remedies of Disclosing Party under this Agreement, by statute, at law, in equity, or otherwise. "

5. Give the agreement of the parties that a restraining order would be the only remedy which would adequately address the risk of disclosure of confidential information.

6. Rosenzweig has been communicating and disseminating Confidential Information throughout many locations including a massive breach in California.

SON for preliminary injuntion regarding Paul Del Gallo only. 7/15/20 Shall order of notice to issue returnable Mon August 10, 2020 @ 2.00

84

7. That situation is of great concern, as included in the California Confidential data is an employee who was harmed in 2007. Plaintiffs have an ethical and legal responsibility to protect that former employee.

8. Rosenzweig has begun claiming publicly in California that he is the owner of the clients and intellectual property of the defendants.

9. This has included the information from his failed engagement of Wells Fargo for "cultural analytics". This unauthorized use for an "experiment" by Rosenzweig failed horribly, and Wells Fargo's CEO was banned from the banking industry, and Wells Fargo paid a multi-billion dollar fine, all due directly to Rosenzweig's failure.

10. Rosenzweig's actions are directly a danger to all plaintiffs, but far more importantly to the Plaintiff's employees, clients, investors, and vendors. A great deal of the confidential information is highly sensitive.

11. In the last 25 days we have received dozens of emails, phone calls, and other correspondence both inquiring as to why Rosenzweig was claiming this confidential information as his own, and why he was sharing employee and client data with parties who would abuse that information.

12. Due to the Covid outbreak Plaintiffs are without choice but to request this restraining order and injunction to prevent breaches by Rosenzweig and preventing further harm to the employees, investors, and clients of the firms.

THEREFORE: Plaintiffs respectfully request that this Honorable Court 1) Order a temporary restraining order against Rosenzweig in the use of any of the confidential information in the contract, directly or implied 2). Schedule a hearing for a permanent restraining order, 3) affix the date of the temporary restraining order to be concurrent with the hearing for the permanent restraining order and 3) to provide whatever other relief this court deems appropriate.

Dated this July 6, 2020

Paul Del Gallo
79 Nancy Ave.
Pittsfield Ma. 01201
215-498-7146
Paul.DelGallo@gmail.com